COFFIN (SWEENEY v.). See Case No. 13,-686.

COFFIN (UNITED STATES v.). See Cases Nos. 14,823 and 14,824.

---

## Case No. 2,953.

### COFFIN v. WELD et al.

[2 Lowell, 81.][1]

District Court, D. Massachusetts. Dec., 1871.

DISCHARGE OF SEAMAN FOR ILL-TREATMENT—DUTY OF CONSUL—CONSTRUCTION OF STATUTES — EXTRA WAGES—ONE THIRD TO UNITED STATES.

1. Seamen who are persistently ill-treated by their officers have the right to demand a discharge from their contract; and, if they leave the vessel, they are not deserters.

2. The statute of 1840, cl. 17 (5 Stat. 396), requiring consuls, when deserters are apprehended and brought before them, to inquire into the facts, and, if satisfied that the desertion was caused by unusual or cruel treatment, to discharge the deserter, who shall have three months' extra pay, is to be construed to give consuls the like power and duty when applied to by seamen who have not deserted.

3. Taking into consideration the other acts in pari materia, and especially the statute of 1856, § 26 (11 Stat. 62), one-third of the three months' pay mentioned in clause 17 of the act of 1840 is to go to the United States.

4. Where it appeared that the crew justly complained of cruel conduct on the part of the mate, and the consul at a foreign port effected a compromise, by which the master was to discharge the mate and the crew were to navigate the ship to the next port; and the crew went on board the ship again, but afterwards refused duty, upon a suspicion, which appeared not wholly unfounded, that the mate had not been discharged, and the consul then discharged them for disobedience,—held, they might recover two months' wages; because they were entitled to their discharge, and the consul had never adjudged that they were not.

[Cited in the Paul Revere, 10 Fed. 158; Gove v. Judson, 19 Fed. 524.]

In February, 1870, the libellant [F. B. Coffin] was shipped at Boston on the ship Fearless, belonging to the respondents [W. F. Weld and others], for a voyage to Batavia and other ports in the East Indies, and back to the United States. He was discharged at Batavia in May, and was sent thence to Singapore, where he took service on board another ship, at a less rate of wages, and arrived home in November, 1870. The Fearless reached this port in January, 1871. The libellant alleged that he was discharged by the consul at Batavia on account of ill-usage received from the master and mate. The answer insisted that eight of the men complained to the consul of the mate's harsh and cruel conduct, and made no charges against the master; and that it was agreed, upon the suggestion of the consul, that the mate should be discharged, and the men should return to duty; that the mate was discharged, and left the ship; but the men, on being required to get the ship under weigh, refused to do any duty, and were discharged by the consul for

[1] [Reported by Hon. John Lowell, LL.D., District Judge, and here reprinted by permission.]

disobedience. The evidence tended to show that the original ship's company consisted of a master, two mates, a cook, a steward, a carpenter, and sixteen men before the mast; that the ship arrived at Batavia in May, and eight of the men insisted on seeing the consul, and complained to him of ill-usage, and that the others afterwards made a similar complaint. The consul testified, that, according to the best of his recollection, the mate only was accused of cruelty, and not the master; and he further said, that it was agreed that the first mate, who was the cause of the difficulty, should be discharged, that the captain should give an agreement in writing that the crew should be well treated during the further prosecution of the voyage to Singapore, and the men should return to duty; that these terms were fully carried out by himself and the master, but the eight men still refused duty, and were discharged by him for disobedience. Whether the complaint was solely against the mate, or included the master, and whether the libellant agreed to the compromise, were disputed points upon the evidence. It was proved that the men returned to the vessel either voluntarily or through fear or coercion, and that the vessel was ready for sea, and the order was given to weigh anchor; that the mate was then on board, and in his working-dress, and witnesses on both sides said that they inferred he had not been discharged. It was at this time the eight men refused duty. The mate afterwards left the ship, but when, or under what circumstances, did not appear. The second mate had already been discharged, with his own consent, and a man had been promoted to his place. The remaining seven men made the trip to Singapore, and were all discharged by the consul there; and for cause of discharge the consul entered on the articles against the name of each man some act of cruelty or some threats on the part of the mate. The mate was reshipped at the same port, with a new crew.

H. M. Knowlton, for libellant.

H. C. Hutchins and H. H. Currier, for respondents.

LOWELL, District Judge. The libellant and seven others of the crew of the Fearless were discharged at Batavia, with the consul's consent. Neither the libel nor the answer states the facts correctly. The man was not discharged for ill-usage, as he alleges; nor is it exactly true that the master agreed to discharge the mate, and did discharge him, and that the men agreed to return to duty, as the answer puts it. The agreement appears to have been that the men would serve as far as Singapore, and be discharged there, for causes already existing; but the mate was not to go on that trip. The master broke his part of the compromise, or at least appeared to break it, by permitting the mate to be on board the ship in his working-dress, though he afterwards sent him on shore. The consul tried, in vain, to induce the men to return to duty, and to induce the master to take them to Singapore in irons; and at last discharged them for disobedience. Two questions arise from these facts: 1. Is the action of the consul conclusive of the right of the master to dismiss the men without pay? 2. If not, is the libellant, on the facts, entitled to any thing? Fraud excepted, the consul's action is binding on all parties in those cases in which the law gives him a discretion. By the very terms of the act of 1803 [2 Stat. 203], the production of his certificate that a seaman was discharged with his consent is a compliance with the master's bond to return the seaman, or produce the consul's certificate of his discharge. Wilson v. The Mary [Case No. 17,823]. His order is held in this circuit to be a bar to an action against the master for causing the men to be imprisoned in a foreign port by the authorities thereof. Jordan v. Williams [Id. 7,528]; Chester v. Benner [Id. 2,660]. When seamen are sent home by the consul to be tried for a crime, their right to wages has been held to end with the arrest. Tingle v. Tucker [Id. 14,057]. And his certificate of the assent of the seaman to his own discharge is conclusive. Lamb v. Briard [Id. 8,010]. But the certificate of the consul must show clearly his jurisdiction and the grounds of his action. The Atlantic [Id. 620]. And, as a general rule, the right to wages after a discharge, which is not made at the request of the mariner, may be supported or contested on its merits, notwithstanding the action of the consul; because the statutes give him no express authority to remit wages, excepting in the cases mentioned in the ninth and subsequent clauses of the act of 1840, the fifth, sixth, and seventh clauses of that act having been repealed by section 33 of the statute of 1856 (11 Stat. 65). In other cases, settlements of wages and other terms of discharge made by or with the sanction of consuls may be inquired into, and varied. See Hutchinson v. Coombs [Case No. 6,955]; Jay v. Almy [Id. 7,236]; Brunent v. Taber [Id. 2,054]; The Atlantic [supra]; Foye v. Dabney [Case No. 5,022]; Jenks v. Cox [Id. 7,277]. The consul has jurisdiction, as will presently appear, to inquire into cruel treatment of the crew by the master and officers; and if the consul in this case had decided that there had been no cruelty, his finding might be conclusive: but he made no such decision at any time. Cruelty was admitted to have been used towards all the men; and all that the consul decided was, that they had broken a compromise, which he thought a fair one.

Coming to the facts presented by the testimony here, I may say that I know of no authority that the consul has to discharge a seamen for disobedience. I do not mean that he may not and ought not to advise the master, or that the latter may not discharge a man for willful and obstinate refusal of

duty; but that, in a suit for wages, the ultimate responsibility rests on the master, and that the advice of the consul is only evidence, and not a judicial and conclusive finding, that the man ought to be discharged. U. S. v. Lunt [Case No. 15,642].

The evidence on both sides in this case proves beyond any doubt that the mate was unfit for his office, and that he had given the men just cause to demand their discharge. Indeed, this was conceded; and all the remaining foremast hands, excepting the one promoted to be second mate, were discharged for this cause at Singapore, three weeks after the time now under consideration, and that cause was certified upon the articles, but the cruelty had all been committed on the voyage out to Batavia.

The case for the respondents is, that the libellant and seven others who were discharged at Batavia had agreed to a compromise, by which they were all to go to Singapore and be discharged there; and that the master kept his part of the arrangement, but they broke theirs. This defence is not made out. The evidence is equally clear, and from witnesses on both sides, that the mate was not discharged, even for the three weeks; but that, when the men refused to go to sea from Batavia, the mate was on board, in his working dress, and apparently occupying his old position. Under these circumstances, the men were justified in refusing to go on. Mariners have a right to leave a vessel on which they are constantly and persistently ill-treated; and by the general maritime law such conduct is not desertion; and they may recover full wages notwithstanding. Brown v. The Independence [Case No. 2,014]; Knowlton v. Boss [Id. 7,901]; The America [Id. 286]. It appears to me that the statute of 1840 has introduced a most important modification of this doctrine; for by the seventeenth clause (5 Stat. 396), it is enacted, that in all cases where deserters are apprehended the consul or commercial agent shall inquire into the facts, and, if satisfied that the desertion was caused by unusual or cruel treatment, the mariner shall be discharged, and receive, in addition to his wages to the time of his discharge, three months' pay; and the officer discharging him shall enter upon the crew list and the shipping articles the cause of discharge, and the particulars in which the cruelty or unusual treatment consisted, and subscribe his name thereto officially. In construing this statute, it is impossible to maintain that its scope is limited to cases in which deserters are apprehended. The rights of the seaman and of the owners do not depend on the desertion, but on the treatment; else the master, by forcing the crew from the ship without permitting them to see the consul, and then refusing to apprehend them, might rob them of their wages, by treating them as deserters not worthy of being re-

claimed. The consul at Singapore took the right course, and discharged the men for cruel treatment by the mate, and noted the cause of discharge upon the articles, though they had not deserted. The statute is a remedial one, and states a general rule under guise of a particular example, as is not uncommon with acts of congress. It cannot be read and understood in any other sense. The rights of the seamen may, in some cases, —perhaps in this case,—be abridged by this statute, for it gives a certain fixed measure of damages instead of wages to the end of the voyage; but that it applies to all cases of cruel treatment, by whomsoever the case is brought before the consul, I cannot doubt.

The libellant was clearly and confessedly entitled to his discharge; and, if he waived it for a time, which is very doubtful, it was upon conditions which were broken by the other contracting party. But even if that breach by the master were not made out, the only contract that the libellant broke was for a trip from Batavia to Singapore. I must therefore award him three months' pay, unless the meaning of the statute is that one-third of this is to go to the United States. Upon the mere language of this clause, it would be plain enough that the man himself is to have the full three months' pay; but a comparison of the several statutes on the same subject throws much doubt upon it. I am inclined to think, upon the whole that section 26 of the act of 1856 (11 Stat. 62), modifies the seventeenth clause of the act of 1840, if the latter means to give the man the whole of this sum. That section says: That in all cases in which a seaman is entitled to his discharge under any act of congress, or according to the general principles or usages of maritime law, there shall be a payment of three months' wages, excepting only as provided in the ninth clause of the act of 1840 (that is, where a voyage has been prolonged, &c., without any fault of the master); and that these extra wages shall be applicable to the same purposes and in the same manner as is directed by the act of 1803, which gives two-thirds only to the mariner, and that subject to certain charges, if he has incurred them. My decree, therefore, will be for two months' wages, or forty dollars, unless the libellant had received advances beyond the wages due him on the 23d of May, 1870, which I did not distinctly gather from the evidence, or unless there is a balance due him on that account to be added to the forty dollars. He is also to have his costs.

Interlocutory decree for the libellant.