## The Paul Revere.

*(District Court, S. D. New York.   January 27, 1882.)*

1. SEAMEN'S WAGES—EFFECT OF CONSUL'S DISCHARGE.
    Where a consul has by statute jurisdiction to grant a discharge, his certificate thereof, duly authenticated, is a bar to a seaman's claim for wages subsequent to his discharge.

2. SAME.
    Where, upon the proceedings before the consul on a charge of criminal misconduct, it does not appear that any question was made concerning the seaman's wages at the time of his discharge, the seaman is not precluded from claiming any wages which may, upon the merits, appear to be due to him.

3. SEAMEN—PUNISHMENT FOR MISCONDUCT.
    Double punishment through loss of wages, in addition to confinement on board, is not to be imposed except in cases where the seaman is incorrigibly disobedient, and his confinement is necessary to the safety of the ship, in consequence of his own dangerous character.

4. SAME—DOUBLE PUNISHMENT WHEN NOT IMPOSED—CASE STATED.
    Where the cook (colored) shipped for a voyage from New York to Yokohama and back, and when two months out, in an affray with the steward, fired two shots of a small pistol, by which the steward received a flesh wound in the wrist, and it appeared that the steward was a man of a quarrelsome and dangerous character; that the affray was the result of several previous quarrels and challenges to fight; and it appearing that aside from this affray the cook was neither quarrelsome nor dangerous in his ordinary behavior, and had previously applied to the captain for protection against the steward; and that immediately after the firing he was arrested without resistance, put in irons by

the orders of the master, and kept in confinement during the following four months until after the arrival at Yokohama, and that his conduct during this time was good, and permission to return to duty had been repeatedly sought from the captain by himself and others of the crew, *held*, that the cook was entitled to his wages up to the time of his discharge at Yokohama.

In Admiralty.   Action for seaman's wages.

This action was brought by the libellant (colored) to recover his wages as cook on board the ship Paul Revere, on her voyage from New York to Yokohama and back, from June 24 to September 24, 1879.   On Sunday morning, September 1, 1878, about two months after the commencement of the voyage, an affray between the cook and the steward took place in the galley, in the course of which the cook fired two shots of a small pistol at the steward, by one of which the steward was wounded in the wrist.   The libellant was immediately seized, put in irons, and kept so, for the most part, as the mate testified, until about a month before reaching Yokohama, when, being sick, the irons were removed from him, though he was still kept under restraint.   The vessel arrived at Yokohama on December 24, 1878, and on the sixth of January the captain made a complaint in writing against the libellant before the consul of an assault with a deadly weapon.   Upon the following day the libellant was brought before the consul, who, on the seventh, eighth, and ninth of that month, examined the steward, the first and second officers, and the carpenter of the vessel.   On the thirtieth of January he rendered a decision as follows :

"After careful consideration of the evidence in this matter, and in view of the fact that the weapon used by the accused is scarcely more than a toy, and that it would have been very difficult with it to have made a dangerous wound, and that it therefore hardly comes within the definition of a 'dangerous weapon,' and the accuser exhibiting himself as a man of irascible temper, and the evidence showing that the offence charged against the accused was the result of an altercation, one of many between the same parties, and that the accuser has been discharged the ship by consent of the master, the latter considering him a troublesome and violent man, and that the accused has now been a long time in confinement:

"I am of opinion that the offence charged is not of such a serious character as to warrant me in subjecting the government to the expense of transportation of the accused and that of the witnesses to the United States, and of his trial there, and I consider that he has been sufficiently punished already.

"It is therefore ordered that he be discharged from arrest.

[Signed]   "THOS. B. VAN BUREN, Consul General.

"*Yokohama, January* 31, 1879.

"On being discharged from arrest, Jackson expressed an unwillingness to return on board ship and asked for his discharge, and the captain consenting, he was accordingly discharged, the ship paying into the consulate one month's extra wages.

    [Signed]               THOS. B. VAN BUREN, Consul General.

"*January* 31, 1879."

The proceedings before the consul were duly certified and read upon the trial. The consul's certificate of the discharge of Jackson, "according to law," on January 31, 1879, was also proved, together with the receipt by the consul of one month's extra wages.

*Alexander & Ash*, for libellant.

*Henry Heath*, for claimant.

BROWN, D. J. The consul at Yokohama had jurisdiction of proceedings to discharge the seaman upon his own application and with the master's consent. His certificate of such a discharge, duly proved and authenticated, is therefore conclusive, and bars any claim by the libellant to subsequent wages. *Coffin* v. *Weld*, 2 Low. 81; *Lamb* v. *Briard*, 5 Abb. Adm. 367; *Tingle* v. *Tucker*, Id. 919.

The proceedings before the consul do not show that any question was made before him concerning the wages which might be due to the libellant up to the time of his discharge, or that any inquiry or consideration was given to that subject. The libellant is, therefore, not precluded by those proceedings from claiming anything to which, upon the merits, he may be entitled. *Hutchinson* v. *Coombs*, 1 Ware, 65; *The Nimrod*, Id. 9.

The affray on the morning of September 1st was the result of repeated quarrels between the cook and the steward during the two months previous. The steward is shown to have been of a quarrelsome disposition, and he was discharged at Yokohama. According to the libellant's account of the affray upon the trial, after high words between them in the galley the steward had rushed out, and presently came back to the door of the galley with one hand in his pocket, holding the handle of a knife, recognized by the cook as having a long blade, and with violent language challenged him to come out and fight; that the cook asked him what he had in his pocket, and told him to go away; that the steward then rushed towards him; and that the libellant thereupon, believing his life in danger, standing in the doorway of his own room leading from the galley, fired at him twice with a pistol. The steward testified before the cunsul that the cook had first challenged him to fight, and that he had afterwards

come to the door of the galley and renewed the challenge; that the instrument in his hand was a can-opener and not a knife. When the mate and captain, upon hearing the pistol shots, immediately went to the galley, no resistance was made by the cook; but he said he was sorry he had not killed him. No complaint was made of the subsequent conduct of the cook, nor did he at any time show any evidences of an ugly disposition. Several times during his confinement he requested to be allowed to go on duty. Similar requests in his behalf were made by others of the crew, none of which were acceded to by the captain. The pistol was not owned by Jackson, but had been given to him to be exchanged abroad for some foreign article. It was scarcely capable of inflicting a serious wound. The ball from it lodged in the steward's wrist, but inflicted only a flesh wound, which disabled his hand for two days only.

The captain was examined before the consul, and his deposition was also taken in this case. From these it does not appear that he ever instituted any inquiry into the particular causes of the affray, but he was familiar with the previous quarrelling between the cook and the steward, as he had shortly before, when appealed to by the cook for some protection against the steward, told him to get along as well as he could. From the violent character of the steward it is not certain that the cook did not have reasonable cause to believe himself in danger when the steward approached him from the galley door before he fired; but the fact that he had a pistol at hand, ready for use, and his language when arrested immediately after firing, show, not only that he was at the time in great passion, but also that his act was not merely an act of self-defence. The circumstances, while not sufficient to furnish a justification, do show much palliation in the degree of his offence. His long subsequent confinement by the master until the arrival at Yokohama was considered by the consul in his decision a sufficient punishment. In my judgment it was altogether more than was warranted at the hands of the master, having reference only to the character of the cook himself, and it may be that the confinement of the cook till arrival at Yokohama was quite as much an act of prudence and protection to him, in consequence of the quarrelsome and dangerous character of the steward, and the captain's belief that it was necessary to keep them apart. Aside from this consideration, the evidence does not show sufficient in the general behavior of the cook to warrant the prevention of his subse-

quent return to duty, as he desired. To inflict upon him, under these circumstances, loss of wages also, would be imposing a double punishment.

In the case of *Brower* v. *The Maiden*, Gilp. 296, *Hopkinson*, J., says:

"When seamen are confined on board for any misconduct or disobedience, has it ever been pretended that their wages stop, or are therefore forfeited during confinement? I know of no such case. Their imprisonment is their punishment, and forfeiture of wages has not been added to it." See, also, *Bray* v. *The Ship Atlanta*, Bee, 48; *Wood* v. *The Nimrod*, Gilp. 83, 89; *Jay* v. *Almy*, 1 Wood & M. 262; *Thorn* v. *White*, 1 Pet. Ad. 168, 175.

It is only where a mariner is incorrigibly disobedient, and his confinement, in consequence of his own dangerous character, is necessary to the safety of the ship, that a forfeiture of wages has also been imposed. It would be not only unjust to the seaman, but highly impolitic and dangerous as a precedent, to permit the vessel to make a profit by the confinement of seamen on board except in cases of this description. The proofs in this case fall far short of that, and the libellant should, therefore, recover his wages up to January 31, 1879, at the rate of $30 per month, less $60 advanced to him, with costs.