THE LAKME.

(District Court, D. Washington, N. D.   March 25, 1899.)

1. SEAMEN—CONTRACT OF EMPLOYMENT—PAROL EVIDENCE TO VARY—SHIPPING ARTICLES.
      Seamen who have signed shipping articles for a voyage are bound thereby, and cannot vary, add to, nor take from the terms of the written contract by parol evidence of an additional verbal agreement.

2. SAME—CONSTRUCTION OF SHIPPING ARTICLES—EXTRA WORK.
      Under shipping articles containing no express stipulations in regard to hours of work, seamen are bound to do whatever is required of them for the safety and cleanliness of the ship and the preservation of the cargo, at whatever hours required by the master, on week days, Sundays, holidays, or at night, whether the vessel is under way, at anchor, or in port; but it is not their duty to perform labor in handling the cargo on Sundays or holidays, or outside of the usual working hours constituting a day's labor, when the vessel is in port, and there are no circumstances of peril which render it necessary.

3. SAME—COMPENSATION FOR WORK OUTSIDE OF CONTRACT.
      Seamen may be required to perform extra work in maneuvering the ship or handling cargo by the master at any time, he being the sole judge of its necessity; but when required to do such work not contemplated by their shipping articles, and which is merely for the advantage of the owners or charterers, they are entitled to recover reasonable extra wages therefor, or, if induced by promise of payment, to recover the amount agreed upon.

4. SAME—LIBEL FOR EXTRA WAGES—COSTS.
      Where seamen justly entitled to extra wages claim a greatly excessive amount, and bring action therefor, they will not be allowed full costs. In this case three-fourths of their taxable costs awarded to libelants.

This was a libel by D. Springer and others against the steamer Lakme to recover extra wages as seamen.

R. W. Emmons, for libelants.

W. H. Gorham, for claimant.

HANFORD, District Judge.   The libelants in this case served as mariners on board the steam schooner Lakme on a voyage from Seattle to St. Michaels and return, and they have received payment of the full amount of wages for the time of their service at the rate stipulated for in the shipping articles, which they signed; but they have brought this suit to recover payment for alleged overtime at the rate of 40 cents per hour. The testimony of the master and all of the crew who have appeared as witnesses is to the effect that, at the time of hiring

the men, the captain informed them that they would be paid for overtime at the rate of 40 cents per hour. No such agreement, however, is contained in the shipping articles. The testimony of the libelants also shows that at Seattle, before the departure of the vessel on her voyage, they were required to work on Sundays and after working hours on week days, and that at one or two points between Seattle and St. Michaels they were also required to work on Sunday and during the hours of the night, and on arrival at St. Michaels they discharged cargo on Sunday and on the 4th of July. They kept an account of the extra hours and Sunday and holiday work, and obtained certificates of the officers that their account of overtime is correct. There is a clear preponderance of the evidence, however, that at Seattle the vessel was loaded and her fuel and cargo was stowed by stevedores, and the crew of the vessel did not work on Sundays, or at any other time, except to perform the usual and ordinary duties of seamen in taking care of the vessel, and moving her when necessary, and cleaning up. There is also direct contradiction in the evidence as to the work alleged to have been required of the crew on Sundays at intermediate places, but it is shown by clear and uncontradicted evidence that the libelants were employed in discharging cargo at St. Michaels on the 3d day of July, which was Sunday, and also on the 4th day of July; and, according to the captain's evidence, on those two days they each worked about 25 hours. The evidence fails to show that there was any emergency or reason for working the crew in discharging the cargo on those days, except to gain time for the advantage of the charterers, and it is not probable that the crew would have worked willingly without being induced by the promise of the captain that they should be paid at the rate of 40 cents per hour.

It is the contention of the libelants that they are entitled, by virtue of the verbal contract which they made with the captain, to be paid for all of their overtime at the rate of 40 cents per hour. This claim is resisted on the grounds that the alleged verbal contract is invalid, if made, for the reason that it is not set forth in the shipping articles, and the libelants did not do any work on the ship in addition to what they were obligated by the terms of their contract to perform for the wages stipulated for in the shipping articles. As to these controverted points the decision of the court is as follows:

1. Seamen who have signed shipping articles for a voyage are bound by the terms of their contract, and it is not permissible for them to vary, add to, or take from the terms of the contract, as written, by introducing parol evidence that there was any different or additional understanding. It is necessary for the protection of seamen that ship owners and masters be held to strict performance of their part of shipping contracts, and justice requires that the same rule be applied in determining the rights of the parties, whether it be invoked by the seamen or by their adversaries. The Triton, Fed. Cas. No. 14,181; The Warrington, Fed. Cas. No. 17,208.

2. By a contract of hiring like the one which these libelants signed, containing no extraordinary provisions or express stipulations in regard to the hours which seamen may be required to work, seamen

become obligated to do whatever is required of them for the safety and cleanliness of the ship and preservation of her cargo, at whatever hours may be required by the master, on week days, Sundays, holidays, and at night, whether the vessel is under way, or at anchor, or moored in port; but it is not their duty to perform labor in handling the cargo on Sundays. or holidays, or before or after the usual working hours constituting a customary day's labor, when the vessel is in port, and there are no circumstances of peril creating a necessity for working extra hours. The monthly wages specified in the shipping articles are legal compensation for all the labor, perils, and hardships required in navigating and taking care of the vessel and cargo under the captain's orders, and for handling the cargo in lading and stowing and unlading on ordinary working days and during the customary working hours; but when seamen are required or induced by the master to do extra work in handling the cargo, in port, for the mere advantage of the owners or charterers, such extra work is outside of the terms of the contract contained in the shipping articles, and in all such cases the law recognizes the scriptural rule that the laborer is worthy of his hire.

3. Seamen are not exempt from working on Sundays and holidays, even when in port, if the master deems it necessary for them to work. Johnson v. The Cyane, Fed. Cas. No. 7,381. He is the sole judge of the necessity, and seamen are obliged to obey his orders in maneuvering the ship and working cargo at all times. But it does not follow from this rule that they are not entitled to compensation for working on Sundays and holidays when the ship is in port, and there is no actual emergency. Where they perform such extra labor under compulsion, they are entitled to receive a reasonable amount of extra wages; and where the service is performed voluntarily, but under inducement by promises of the master for extra compensation, they are entitled to receive the reward promised.

4. I am convinced by the evidence that the libelants did not perform any work outside of their ordinary duties as seamen on board the Lakme, at Seattle or elsewhere, prior to arrival of the vessel at St. Michaels. At that place they did perform 25 hours' labor for the benefit of the charterers, which was not required of them by the contract contained in the shipping articles, and they were induced to perform said labor by the promise of the master that they should be paid for it at the rate of 40 cents per hour.

A decree will be entered awarding to each of the libelants the sum of $10, and three-fourths of their taxable costs. I deem it proper to make a reduction of the costs to be recovered by the libelants, for the reason that the amount claimed by them for extra time is grossly excessive, and it is probable that, if they had claimed no more than they earned, this litigation might have been avoided.