### THE DONNA LANE.

### HANSEN et al. v. DONNA LANE MOTOR SHIP CORPORATION.

(District Court, W. D. Washington, S. D. May 29, 1924.)

No. 3914.

1. **Seamen ☞14—Refusal to assist with cargo on Sunday held wrongful; "safe harbor."**

Where ship had proceeded up river above charted waters and soundings of which captain had information, and was in country, where sudden blows might be expected, without protection from wind, seamen's refusal to assist with cargo on Sunday, by showing coolies how to load and unload slings necessary to prevent breakage, when ordered to so do by captain, *held* wrongful; the ship not being in a "safe harbor," within Seamen's Act 1915, § 2 (Comp. St. § 8363b), providing that seamen shall not be required to do unnecessary work on Sundays in safe harbors, the work being necessary, and the order of the master not being an abuse of discretion.

2. **Seamen ☞12—Refusal to assist with cargo when ordered by master held not to warrant discharge.**

Seamen's refusal to assist with cargo on Sunday when vessel was not in safe harbor and the work was necessary, but where peril was not great nor danger imminent, *held* not to warrant their discharge, under Rev. St. §§ 4580, 4581, 4596, 4597 (Comp. St. §§ 8371, 8372, 8380, 8381), in the absence of a showing of incompetency or continued willful disobedience or neglect of duty, in view of Rev. St. §§ 4525, 4527, 4528, 4568, 4576, 4604, 4605 (Comp. St. §§ 8316, 8318, 8319, 8357, 8367, 8385, 8386).

3. **Seamen ☞12—"Neglect of duty," within statute as to rights of discharged seamen, implies continued neglect.**

"Neglect of duty," within Rev. St. § 4581 (Comp. St. § 8372), relating to rights of seaman discharged for reasons other than "neglect of duty, incompetency or injury incurred on the vessel," implies continued neglect, not a single act of neglect, failure, or refusal to perform a duty.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Neglect.]

---

[1] On rehearing the court held the contrary. See 228 Pac. 710.

**4. Seamen ⬦➠19—Measure of recovery by discharged seamen stated.**

Under Rev. St. § 4581 (Comp. St. § 8372), providing for payment of one month's extra wages to seamen, where not discharged for neglect of duty, incompetency, or injury, does not limit recovery of seamen mistakenly discharged by consul at instance of master, to a month's extra wages, but discharged seamen are entitled to necessary shore expenses while awaiting another ship, and a reasonable amount for transportation from port of discharge to port of embarkation, but are not entitled to recover what they would have earned, had they completed the voyage, less actual earnings during such period.

**5. Seamen ⬦➠26—Determination of amount due wrongfully discharged seamen held within jurisdiction of court in libel by seamen.**

In absence of an award of shipping commissioner as to amount due wrongfully discharged seamen, under Rev. St. § 4554 (Comp. St. § 8343), the court had jurisdiction to determine amount due in libel by seamen, in view of Rev. St. §§ 4530, 4552, 4603 (Comp. St. §§ 8322, 8341, 8384).

In Admiralty. Libels by H. P. Hansen and others against the motor ship Donna Lane, her engine, tackle, apparel, and furniture, claimed by the Donna Lane Motor Ship Corporation. Decree for libelants.

Winter S. Martin, of Seattle, Wash., for libelants.

W. V. Tanner and John P. Garvin, both of Seattle, Wash., for claimant.

CUSHMAN, District Judge. At Seattle, in November, 1921, the libelants shipped on the Donna Lane as able seamen on a voyage to the Orient and return, not exceeding 12 months. The voyage was completed in December the next year. Libelants were discharged at Hongkong in April, 1922; each sues for certain overtime, and for subsistence at Hongkong while waiting to ship upon other vessels, and for the amount each would have earned on the voyage if he had not been discharged, less his earnings during that period. The shipping articles contained no provision pertinent to the present inquiry, other than the following:

"Crew to load and discharge all cargo and ballast, if required by the master."

The ship's log shows the following:

"M. S. Donna Lane, March 12, 1922. River Matshe, China, anchored of the port of Che Kam, district of Kwan Chu Wan. Otto Fogel, A. B., being this day ordered by the master of the vessel to turn to and assist in the discharge of cargo, did absolutely refuse to obey a lawful order of said master. He is therefore logged for this offense in accordance with R. S. § 4597, and the subject of penalty for such will be taken up at the first port of arrival where an American consul is stationed. O. J. Stewart. Libelants' Exhibit A.

"A. C. Bowman, U. S. Commissioner."

Similar entries were made as to libelants other than Otto Fogel. After the occurrence mentioned in the log entry the ship proceeded to Hongkong, where she remained a few days, when libelants were directed, presumably at the instance of the master, to appear before the American consul. The captain also appeared. The testimony is that no witnesses were sworn by the consul; that he asked the libelants if they had refused to work cargo on Sunday, which they admitted. The

following is the record of proceedings before the consul, affixed to the shipping articles:

"Certificate of Discharge of Seamen, to be Attached to Crew List and Shipping Articles.

"American Consular Service, Hongkong, April 1, 1922.

"I, the undersigned, do hereby certify that the under named seamen have been duly discharged at this port from the M. S. Donna Lane of Seattle, Washington, the master of said vessel having deposited in this office the wages and extra wages as hereinafter set opposite their names, respectively, viz.:

"* * * Date of discharge, April 3. Name of seaman, K. J. Larson, Amount of wages collected and paid, G. $140.65, Cause of discharge, disobeying master's orders. Date of discharge, April 3. Name of seaman, H. P. Hansen. Amount of wages collected and paid, $150.95. Cause of discharge, disobeying master's orders. Date of discharge, April 3. Name of seaman, Otto Fogel. Amount of wages collected and paid, $75.05. Cause of discharge, disobeying master's orders. * * *

"Given under my hand and the seal of this office the day and year above written. [Signed] W. J. McCafferty, Vice Consul of the United States of America. [Seal.]"

No extra wages were in fact paid libelants. Under date of April 15th appears the following entry in the log:

"Hongkong, April 13, 1922.

"At a hearing before the American consul, H. P. Hansen, Otto Fogel, and Karl J. Larson were ordered from the ship and were paid off before said consul, for refusing to obey the master's orders.

"[Signed] C. J. Stewart, Master.

"Witness: A. B. Coffeldt, Second Mate."

The evidence shows that the discharge was not procured by or acquiesced in by libelants. After the proceeding before the consul, libelants returned to the ship and remained until ordered from the ship, while still at Hongkong, by its officers. Briefly, the circumstances of their refusal to work were: That on Saturday, March 12th, the ship entered the Matshe river, which empties into the Tonkin Gulf, proceeding some 16 miles up the river, 4 miles above the charted waters, and one-half mile above any soundings of which the captain had any information. The ship anchored in four fathoms of water, with a two or three foot rise and fall of the tide. The river was a mile or more wide at this point, and the channel probably 500 feet wide, with muddy bottom, low mud banks, affording no protection from the wind. This was in a country where sudden blows may be expected. The captain had case oil to discharge. It is evident he was anxious to get out as soon as possible, for the captain deemed it necessary to have the chief engineer tend hatch, which, the master states, was very unusual. He evidently was not familiar with the anchorage before coming up the river. He secured coolies to handle the cargo. On the next day, Sunday, he directed his crew, including libelants, to assist with the cargo by showing the coolies how to load and unload the slings, which he says was necessary to prevent breakage. This the libelants refused to do, claiming they were not required to work on Sunday.

Section 2 of the Seamen's Act of 1915 (Comp. St. § 8363b) provides:

"* * * The seamen shall not be shipped to work alternately in the fire room and on deck, nor shall those shipped for deck duty be required to work

in the fire room, or vice versa; but these provisions shall not limit either the authority of the master or other officer or the obedience of the seamen when, in the judgment of the master or other officer, the whole or any part of the crew are needed for the maneuvering of the vessel or the performance of work necessary for the safety of the vessel or her cargo, or for the saving of life aboard other vessels in jeopardy, or when in port or at sea from requiring the whole or any part of the crew to participate in the performance of fire, lifeboat, and other drills.

"*Sundays and Holidays in Port.* While such vessel is in a safe harbor no seaman shall be required to do any unnecessary work on Sundays or the following named days: New Year's Day, the Fourth of July, Labor Day, Thanksgiving Day, and Christmas Day; but this shall not prevent the dispatch of a vessel on regular schedule or when ready to proceed on her voyage."

Concerning this section, the Secretary of the Department of Commerce has held:

" * * * Putting it in another way, the provision was not intended to apply until the destination had been reached and the voyage was at an end. This latter does not take place until the vessel has come to anchor, or has made fast to a dock or pier within such safe harbor. Until then, such vessel must be considered as still on her voyage and being navigated. I am therefore of the opinion that the nine hours referred to in the said provision of section 2 of the Act of March 4, 1915, do not begin to run until the vessel has come to anchor or has been made fast to a dock or pier within a safe harbor. The reverse of this is also of course true: When a vessel weighs anchor or lets go the lines and begins her voyage the nine hours cease to run."

[1] Under the circumstances the captain was warranted in requiring the work of libelants which he directed, because he was not in a "safe harbor" and the work was necessary. In consequence the libelants were wrong in refusing. There is nothing in the evidence to disclose any abuse of discretion with which the master must be clothed to determine the safety of the ship's position and her cargo. It was so held by Judge Hanford in The Lakme (D. C.) 93 Fed. 230; and The Carrier Dove (D. C.) 98 Fed. 313.

The question still remains, the peril not being great nor danger imminent, did the refusal, under a claim of right, of libelants to work warrant their discharge? The logging of libelants purports to have been under section 4597, R. S. (section 8381, Comp. Stat.). The pertinent provisions of section 4596, R. S., as amended by the Act of March 4, 1915, and section 4597, R. S., are:

Section 4596, R. S. (section 8380, Comp. Stat.): "Whenever any seaman who has been lawfully engaged or any apprentice to the sea service commits any of the following offenses, he shall be punished as follows: * * *

"Second. * * * for absence without leave at any time within twenty-four hours of the vessel's sailing from any port, either at the commencement or during the progress of the voyage, or for absence at any time without leave and without sufficient reason from his vessel and from his duty, not amounting to desertion, by forfeiture from his wages of not more than two days' pay or sufficient to defray any expenses which shall have been properly incurred in hiring a substitute.

"Third. For quitting the vessel without leave, after her arrival at the port of her delivery and before she is placed in security, by forfeiture from his wages of not more than one month's pay.

"Fourth. For willful disobedience to any lawful command at sea, by being, at the option of the master, placed in irons until such disobedience shall cease, and upon arrival in port by forfeiture from his wages of not more than four days' pay, or, at the discretion of the court, by imprisonment for not more than one month.

"Fifth. For continued willful disobedience to lawful command or continued willful neglect of duty at sea, by being, at the option of the master, placed in irons, on bread and water, with full rations every fifth day, until such disobedience shall cease, and upon arrival in port by forfeiture, for every twenty-four hours' continuance of such disobedience or neglect, of a sum of not more than twelve days' pay, or by imprisonment for not more than three months, at the discretion of the court."

Section 4597, R. S. (Comp. Stat. § 8381): "Upon the commission of any of the offenses enumerated in the preceding section an entry thereof shall be made in the official log book on the day on which the offense was committed, and shall be signed by the master and by the mate or one of the crew. * * *"

[2] It is clear that these sections have to do with the punishment of a seaman and forfeiture of wages where the seaman continues in the service of the ship, and do not purport to affect the question of his discharge. Wages forfeited for desertion are the government's, not the master's. Section 4604, R. S. (Comp. Stat. § 8385). Wages forfeited for causes other than desertion are the master's. Section 4604, R. S. (section 8385, Comp. Stat.).

Under subdivision 4, above, there was subject to forfeiture not more than four days' wages of each of libelants for willful disobedience of a lawful command at sea, certainly not more when discharging cargo, though not being done in a harbor or port. The law applicable to wages upon discharge is found in section 4580, R. S., as amended by the act of 1884 (section 8371, Comp. Stat.), and section 4581, R. S., as amended by the Act of March 4, 1915 (section 8372, Comp. Stat.): .

Section 4580: "Upon the application of the master of any vessel to a consular officer to discharge a seaman, or upon the application of any seaman for his own discharge, if it appears to such officer that said seaman has completed his shipping agreement, or is entitled to his discharge under any act of Congress or according to the general principles or usages of maritime law as recognized in the United States, such officer shall discharge said seaman, and require from the master of said vessel, before such discharge shall be made, payment of the wages which may then be due said seaman; but no payment of extra wages shall be required by any consular officer upon such discharge of any seaman except as provided in this act."

Section 4581, R. S. (section 8372, Comp. Stat.): " * * * The master shall provide any seaman so discharged with employment on a vessel agreed to by the seaman, or shall provide him with one month's extra wages, if it shall be shown to the satisfaction of the consul that such seaman was not discharged for neglect of duty, incompetency, or injury incurred on the vessel. If the seaman is discharged by voluntary consent before the consul, he shall be entitled to his wages up to the time of his discharge, but not for any further period. If the seaman is discharged on account of injury or illness, incapacitating him for service, the expenses of his maintenance and return to the United States shall be paid from the fund for the maintenance and transportation of destitute American seamen."

The obscurity in the meaning of the two foregoing sections arises out of the changes made in the original sections by amendments, made by eliminations and additions, without rewriting the sections. Section 4580, as originally enacted, contemplated a discharge upon the application of a seaman and its language was appropriate to that purpose. By the amendment of 1884, provision was made for discharging a seaman upon the application of the master. As pointed out by Judge

Deady, this section specifies the causes for a seaman's discharge upon his own request, but does not specify those for which the master can demand his discharge; these must be found in the principles or usages of maritime law as recognized in the United States. The T. F. Oakes (C. C.) 36 Fed. 442, at page 445.

[3] A single willful disobedience of a lawful command, at least one no more aggravated than that in the present case, would not warrant, without his consent, the discharge of a seaman before the termination of the voyage. There is no showing in this case that there had been anything in the nature of incompetency or continued willful disobedience of the master's lawful command, nor continued willful neglect of duty. Neglect of duty, as the term is used in section 4581, associated with the word "incompetency," implies continued neglect, not a single act of neglect, failure, or refusal to perform a duty. That these sections are controlling in the situation here presented is further shown by a consideration of the following sections: Section 4525, R. S. (section 8316, Comp. Stat.); section 4527, R. S. (section 8318, Comp. Stat.); section 4528, R. S. (section 8319, Comp. Stat.); section 4568, R. S. (section 8357, Comp. Stat.); section 4576, R. S. (section 8367, Comp. Stat.); section 4605, R. S. (section 8386, Comp. Stat.).

[4] It does not follow that, because Congress has made this provision for a month's extra wages, the seaman is entitled to nothing more than a month's wages, when mistakenly discharged by a consul at the instance of the master. Congress appears to have considered a month's wages reasonably necessary, in addition to all arrears of wages, to insure the payment of his necessary shore expenses while awaiting another ship, and to have required its payment, even when the seaman was rightfully discharged upon the master's complaint. It does not follow, however, that libelants are entitled to recover what they would have earned, had they completed the voyage, less what they actually did earn during such period.

[5] By section 4554, R. S. (section 8343, Comp. Stat.), the award of a shipping commissioner is conclusive upon any question between the master and any of his crew, when the question is submitted to him by both parties in writing. There is no similar statute applicable to hearings before a consul. No reason appears in the present case, in the absence of settlement before a shipping commissioner at the end of a voyage, to depart from the general rule; that the final adjudication as between the parties of the amount due a person for services will be left for determination in a suit by the person claiming for services. Even in cases of settlement and release before a shipping commissioner, under section 4552, R. S. (Comp. Stat. § 8341), the court having jurisdiction may, upon good cause shown, set aside such release and take such action as justice shall require. Section 4530, R. S., as amended (Comp. St. § 8322). See, also, section 4603, R. S. (section 8384, Comp. Stat.).

The foregoing statutes are, in a sense, in pari materia with sections 4580 and 4581. Such differences as there are between settlements by American crews before a shipping commissioner in an American port, and discharges before a consul in a foreign port, must induce a court to scan more closely the proceedings in the latter case; for the help-

lessness of a seaman in a foreign port is necessarily greater than in the ports of our own country. In the instant case there is no evidence of release, save such as was exacted before shipment on another vessel.

The conclusion I have reached is, in general, supported by the following decisions: The T. F. Oakes (C. C.) 36 Fed. 442; Capillo v. Bristol Packing Co. (D. C.) 112 Fed. 439; The W. F. Babcock, 85 Fed. 978, 29 C. C. A. 514; Brunent v. Taber, Fed. Cas. No. 2,054; Tingle v. Tucker, Fed. Cas. No. 14,057; The Paul Revere (D. C.) 10 Fed. 156. While the foregoing may not be directly in point upon the question, because of the various amendments of the statute, and on account of difference in the facts, they inferentially recognize the right to relief such as the court has here decreed. The only case at all directly in point, to which the court's attention has been directed, is that of The Sachem (D. C.) 59 Fed. 790, where Judge Brown granted like relief.

The master gave libelants no certificate of discharge, as required by Rev. St. § 4551 (Comp. St. § 8340). This was deemed an important fact by the court in Pac. Mail S. S. Co. v. Lucas, 258 U. S. 266, 42 Sup. Ct. 308, 66 L. Ed. 614, where a seaman left in the hospital, signing for his past wages, was decreed recovery for his future wages. Each libelant will be decreed the expense incurred by them for necessaries at Hongkong while waiting to ship on other vessels, and further one month's extra wages, less four days' wages forfeited because of willful disobedience of the master's lawful command, and a reasonable amount for their transportation from Hongkong to Seattle. They will be allowed nothing for overtime, as the time they had been allowed off for Sundays and holidays more than equals their overtime. Such a state of facts did not appear in The Lakme (D. C.) 93 Fed. 230, and The Carrier Dove (D. C.) 98 Fed. 313.

The amounts that will be due libelants, under these holdings, are not in dispute, unless it be the amount necessary for transportation from Hongkong to Seattle. If the parties are unable to agree upon this, further testimony may be taken.