## THE SCHOONER JEFFERSON BORDEN.

(*District Court, D. Delaware.* February 19, 1881.)

1. ADMIRALTY JURISDICTION—U. S. COMMISSIONER—REV. ST. § 4546.

In the absence of the district judge from his place of residence, where the same is within three miles of the place where a vessel is moored, the jurisdiction conferred upon him by section 4546, U. S. Revised Statutes, may be exercised by a United States commissioner.

2. SAME—SAME—SAME.

He should satisfy himself of the absence of the district judge from his place of residence, and, having once assumed jurisdiction, the court will not go behind his certificate of "probable cause," but will assume that, as he is acting as a public officer, the principle, "*omnia præsumuntur esse acta rite,*" will apply to his conduct, and that he has not usurped jurisdiction that does not belong to him.

3. SEAMEN—WAGES—DISCHARGE.

Seamen not allowed wages upon days when they wrongfully refuse to work or obey orders.

What facts will constitute a discharge of seamen.

In Admiralty.

In the matter of seamen's wages, for which a libel has been filed and proceedings taken in this court against the schooner Jefferson Borden.

*John C. Patterson* and *Charles G. Rumford,* for libellants.

*William C. Spruance,* for respondent.

BRADFORD, D. J. This case was certified into this court by S. Rodmond Smith, a United States commissioner for this district, under the provisions of section 4546 of the Revised Statutes of the United States. I do not agree to the proposition of the counsel for the respondent, that the United States commissioner was guilty of usurpation of authority in hearing this case. While by the terms of the act of congress the district judge of the United States for the judicial district where the vessel is, is primarily charged with the duty of hearing these cases if his residence be within three miles from the place where the vessel is; yet, if he be absent from his place of residence, jurisdiction is without doubt given by the act of congress to any commissioner of the

circuit court in the district to hear and dispose of the case in the manner pointed out by law. It is true, the commissioner is bound to inform himself of the absence of the judge from his place of residence, but the court will not go behind his certificate in that matter. Indeed, the court is not certain that the certificate of the commissioner should show affirmatively the absence of the judge from his residence. It does not appear in the form prepared by Benedict, now a distinguished admiralty judge, and formerly a United States commissioner; and it would further appear that this being the action of a United States official, that the maxim *omnia præsumuntur esse acta rite* should apply to his action. In point of practice these cases are almost universally tried before a United States commissioner, and not before the judges. In a maritime district the volume of this class of business requiring summary disposition is so great, if this duty was put on the judge it would seriously interfere with the proper discharge of more important ones. I have said thus much to relieve the United States commissioner from the implied censure in the remarks of the defendant's proctor.

1. The only practical question for the consideration of the court is, are these libellants entitled to any, and if any, what wages?

2. And to determine this question it becomes necessary to settle another one, and that is, were these libellants unjustly and improperly discharged from the ship?

It is denied by the respondent that these seamen were discharged at all. He swears that they left against his wishes; that by prolonged absence they became, in contemplation of law, deserters, and he actually took proceedings to have them arrested as such. The four libellants all unite in swearing that they were discharged, or that they were ordered to go ashore. And they are corroborated in this statement by the oaths of three stevedores, impartial witnesses, working at the time on or near the Jefferson Borden. So that if oath is to be placed against oath, the court would have to believe the libellants' story the true one. But there is no such rule of

evidence. It is difficult to determine this question, but as a result of all the evidence on this point the court thinks that Captain Patterson, master of the Jefferson Borden, did tell the crew to go ashore; that he did it in anger; and that the crew so understood him. The time and the manner in which they left the vessel is consistent with this view of the case. The court thinks this fact is established, but it does not believe that the captain intended thereby to discharge his crew. His own conduct is inconsistent with such a theory; for he made provision for their return, both as to food and lodging, and after the space of 48 hours, after their absence from the vessel, he took proceedings to have them arrested as deserters, in which he must have known he could not succeed if he had voluntarily discharged them.

It is evident to the court, from all the testimony in this cause, that these libellants—two of them in particular, George Henry and Edward Brown—were insolent, lazy, and disobedient to orders; and while their conduct did not amount to mutiny, it would have been full justification in the captain discharging them from his ship. It does not follow, therefore, that, if they were discharged, they are entitled to claim pay for the time or times they neglected to perform the duty; for in section 4528 of the Revised Statutes of the United States congress evidently intended that no seaman neglecting to do his work should receive pay for that period, and in pursuance of that section the court feels compelled to disallow the wages of these seamen during the time of their neglect to work. Henry was absent on Sunday all day, Monday until near sundown, and refused to work on Tuesday, Wednesday, and part of Thursday, and his wages for those days will be disallowed. The other three libellants refused to work on Tuesday, Wednesday, and Thursday, and their wages will be disallowed for those days.

The court will not allow the $17 claimed for the four seamen by the amended libel as one month's extra wages, under section 4527, because it thinks that such discharge was "not without fault on their parts."

This cause ought to have been settled, if possible, under the provisions of section 4547; and it appearing that there is a small balance due those seamen, the costs will have to go against the schooner.