NATCHEZ & N. O. PACKET & NAVIGATION CO. et al. v. PRICE.[1]

(Circuit Court of Appeals, Fifth Circuit. February 17, 1896.)

No. 403.

SEAMAN—WRONGFUL DISCHARGE—EVIDENCE—DAMAGES.

A roustabout on a river steamboat, who claimed damages on the ground that he was driven from the boat by the mate because of inability to work through having his hands and feet frozen while handling freight, *held*, on the weight of the evidence, to have left the boat voluntarily, without any sufficient cause, for which reason a decree in his favor should be reversed on appeal.

Appeal from the Circuit Court of the United States for the Eastern District of Louisiana.

This was a libel in rem by Will Price against the steamboat T. P. Leathers, the Natchez & New Orleans Packet & Navigation Company, and others, claimants, to recover a balance of wages, and also damages for injuries. The district court rendered a decree for libelant for $109, and the claimants appealed.

John D. Grace, for appellants.
W. W. Handlin, for appellee.

Before PARDEE and McCORMICK, Circuit Judges, and BOARMAN, District Judge.

McCORMICK, Circuit Judge. In February, 1895, Will Price, the appellee, shipped as a roustabout on the steamer T. P. Leathers, whereof Michael Carbine was master and Daniel O'Neil was mate, for a voyage from New Orleans to Waterloo, on the Mississippi river, and return. When the vessel arrived at Vicksburg on her return trip, the weather was cold, and the hands engaged in putting off and taking on cargo were, some of them, ungloved, and perhaps otherwise inadequately clad for such weather, from which

[1] Rehearing denied April 21, 1896.

they suffered sharply. The appellee claims that one of his hands and one of his feet were so bitten by the frost that he could not work; that on arriving at St. Joe the mate then in charge of the boat and of the work ordered appellee to help in taking on cargo when he was so disabled that he reported his disability to the mate, but was answered roughly that the steamer was not a hospital, and that he must work, or leave the boat; that he remonstrated, showing his hand and foot, but was required with such stern emphasis to work or leave the boat that he had to go ashore in his disabled and destitute condition at that point, many hundred miles remote from his home, in New Orleans; that he was greatly exposed, and endured much suffering and incurred injury in getting home. He exhibited his libel against the vessel, claiming wages and damages for his injuries. The district court passed its decree in his favor for $109, "the same being for nine dollars wages due the libelant and one hundred dollars damages." The appellee, as a witness in his own behalf, and a number of witnesses called by him, testify with details, repetitions, and contradictions to the occurrences at Vicksburg and St. Joe on which are based the charges made in the libel. The captain of the steamer testifies that the appellee did not make any complaint to him at St. Joe, or at any other place, of being sick, frost-bitten, or otherwise unable to perform the services for which he shipped. The mate testifies that no such complaints were made to him by the appellee, or by any one for him; that the appellee left the boat at St. Joe, but was not driven off by any harsh or threatening language or gestures or other cruelty or injustice on the part of the mate. Without considering the express and full contradiction to the libelant's charges, embraced in the testimony of the witness Daniel O'Neil, which presents no badge of unworthiness other than his interest as an officer of the boat, it is evident from a careful analysis of the libelant's own testimony and that of his supporting witnesses that his leaving the boat was, so far, at least, as it and its owners are or can be affected, wholly voluntary on his part. The weather was cold, doubtless exceptionally so for the latitude, even in the depth of winter. Handling cotton bales, boxes of coal, and the boat's lines and stages, all covered with sleet and ice, was not holiday service. That mate's voice of command was probably not keyed down to the gentlest tones when calling the roustabouts from near or under the warm boilers to the frosty work. Even grant that he shouted once and again that "You must work or get off this boat!" it would be going far to say that one even clearly unable to work could thereupon leave the boat, and charge the owners not only with unearned wages, but with resulting damages. It appears from the libelant's own testimony that on the day that he left the boat he got a pass, and reached Natchez, where he passed the night comfortably, and that on the next day he walked out of Natchez a distance of 28 miles, through the snow. While it is true that parties such as this libelant are, in a specially liberal sense, wards of the court, and great vigilance will be exercised to shield them from injustice, the office of guardian must be so administered as not to en-

courage abuses, and the exhibiting of unfounded claims. On full consideration of the whole proof we are of the opinion that the libel should have been dismissed at the cost of the libelant, and it is now so ordered that the libelant, the appellee, take nothing, and that he pay the costs of this court and of the district court.