### THE VILLA Y HERMAN.

(District Court, S. D. Alabama. March 20, 1900.)

SEAMEN—SUIT FOR WAGES—GROUNDS JUSTIFYING DISCHARGE.

    Libelants were duly signed as seamen before a proper officer by an authorized agent of the master of a schooner, and on the next day were taken on board by the agent, and were recognized by the mate as members of the crew, but, with the remainder of the crew, were ordered ashore and discharged by the master a few minutes later, and before the voyage was commenced. *Held,* that on such facts the burden rested upon the vessel, in order to defeat the claim of libelants to a month's wages under the statute, to justify their discharge, which could only be done by showing that they were disqualified for seamen, or an act of disobedience of an aggravated character.

In Admiralty. Suit by discharged seamen to recover wages.

Smith & Gaynor, for libelants.
M. D. Wickersham, for claimant.

TOULMIN, District Judge. The undisputed facts in this case are: That the master of the schooner employed and directed Charles Nelson, a boarding-house master, to get him a crew. That Nelson procured at least two of the libelants, Charles Peters and Peter

Aster, as a part of that crew. That he duly shipped them before the proper officer, where they signed the articles. That on the next day he brought them aboard the vessel,—whether this was at 8 or 9 o'clock, or later, it makes no difference. They went aboard with Nelson, the agent of the master, whose duty it was to report and identify them to the master. Later the crew generally, whoever may have constituted it, was ordered by the mate to single out the lines, and to prepare to pass the towline to the tug. That the lines were singled out, but the towline was not fastened. That the master subsequently ordered the crew generally to leave the vessel, and go ashore, saying that he would not have them, and that they went ashore, and did not return. There are, then, on the evidence in the case, three prominent and substantive facts conceded; facts as to which there is no dispute. They are that Peters and Aster were duly shipped; that they went aboard, and were recognized as a part of the crew of the vessel by the mate; that the master gave orders to the crew, both in person and through the mate; that the libelants were discharged as a part of the crew before the voyage was commenced, and that they were discharged without their consent. The evidence does not satisfy me that the other libelants were ever shipped. Their names do not appear on the articles, and they do not come within the operation of the statute. Section 4527, Rev. St. They, no doubt, came aboard to ship, but I do not find that they made a contract of shipment; so I consider them out of the case, and the libel as to them is dismissed. The only question, then, to be considered as to Peters' and Aster's right to recover is whether they were discharged without fault on their part justifying their discharge. The shipping articles made a binding contract between them and the ship. The master is not ordinarily justified in dissolving the contract with a seaman and discharging him for a single fault, unless it is of a highly aggravated character. 2 Pritch. Adm. Dig. p. 2150; Smith v. Treat, 2 Ware (Dav. 266) 270, Fed. Cas. No. 13,117; Hutchinson v. Combs, 1 Ware, 65, Fed. Cas. No. 6,955. The causes for which a seaman may be discharged are ordinarily such as amount to a disqualification, and show him to be an unsafe or an unfit man to have on board the vessel. Authorities supra. So far as the evidence for the libelants is concerned, it shows no fault on their part, and that their discharge was not justified. The evidence on the part of claimant is in many respects vague, indefinite, and uncertain. The master's testimony is not only so, but it is inconsistent with itself. That the mate was drunk seems to be conceded by the evidence. Whether the master was under the influence of liquor is disputed. The evidence is conflicting on the point. Suffice it to say there seems to be some confusion as to what the order really was disobedience to which is claimed by the master as the cause for the discharge of the crew; also as to whose duty it was to give such order, and who really received it, and to whom it was given. Whether the particular order was given to the libelants, Peters and Aster, or was heard or received by them, and was disobeyed by them individually, is certainly in great doubt. They say it was not. The master says in one place that he gave the mate orders

to have the towline run to the towboat, and the sailors refused to do it. He further says, "The mate reported on board as a drunken man; could not stand; had to go around on his all fours." He further says that he (the master) went on deck of the vessel, and ordered the sailors in the forecastle to run the towline to the tow-boat, and they did not obey the order. He repeated the order two or three times, and they did not run the line; refused to do so, but said nothing. He says he saw two men standing in the forecastle door. He did not know them. Indeed, he says he did not know any of the crew. He did not know whether the libelants were even among the men on board. None of them reported to him for duty, yet he says he had the sailors on board to single out the lines. The master's representative, Nelson, brought them on board as a part of the crew of the vessel, and yet the master enters them on the articles as not reporting,—that they failed to report for duty. It was clearly his duty to take notice of the seamen shipped on his articles, and to have identified them, or had them identified, when they came aboard. If he did not do so, how could he give them orders, at least in person? He says he gave the orders in person, having been informed that they would not obey the mate. He speaks especially of two men that he saw when he gave the order, and says that two men could have easily carried the towrope out to the tug. (He does not identify the two men as the libelants.) While he says he gave the order first to the mate to have the towline carried out to the tug, and he was informed that the sailors would not obey the order, and hence gave the order himself, he says the mate was not strictly sober, and does not think he was sober enough to give intelligent orders. This is a remarkable statement. The master of a vessel gives orders to his mate to have certain things done by the sailors, and yet says that the mate was not sober enough to give intelligent orders. It is hardly more remarkable, however, than the fact, as shown by the evidence on his part, that he gave an order to the crew generally—shown by the evidence to have consisted at the time of four men—to execute an order which two could have done, and at the time he gave the order he saw but two men, and yet he did not compel obedience, and cannot identify them, or even know that they were members of his crew. He says he was not drunk, but had taken something to drink. He did not know the libelants as his crew, but he told them he would not have them on the vessel, and told them to "go to hell ashore," or words to that effect. The master is corroborated to the effect that he gave general orders or cried out on deck several times for the towline to be made fast; that there were several men on deck, supposed to be the crew, but none identified by the witnesses as the libelants. It appears from some of the testimony that there was a good deal of noise and hallooing on deck. It further appears from some of it that it was the duty and custom of the pilot in charge to give the order about the towline, and also that the towline was not to be carried or run out to the towboat, but that it was in fact thrown aboard of the vessel, and should there have been handled and made fast. I mention this to show that there is not a very clear or consistent account of what

did take place on the occasion, or should have taken place. The libelants having shown the contract of shipping, their discharge having not only been shown, but admitted, and libelants having, for their part, shown that their discharge was without their fault, and against their consent, the burden is cast on the claimant to show that they were in fault, and were discharged for good cause. The claimant has, in my opinion, failed to successfully meet this burden. There is a singular fact in this case in that Charles Nelson, the man who represented the master in shipping the libelants and carrying them aboard, and who was in court, was not called to tell what he knew about the transaction; especially in view of the fact that the master, in his testimony, says that he had some men on board the vessel, but they were not his crew. The work actually done by libelants admittedly did not occupy over 10 or 15 minutes. For this I award no wages. "De minimis non curat lex." But under the statute I award one month's wages to each of the libelants, Charles Peters and Peter Aster, to wit, $20 each. It is so ordered.