THE GEORGE B. FERGUSON.

(District Court, D. Maine. November 25, 1905.)

No. 39.

1. SEAMEN—PENALTY FOR WRONGFUL DISCHARGE—SHIPPING COMMISSIONERS' ACT.

Rev. St. § 4527 [U. S. Comp. St. 1901, p. 3077], providing that seamen unjustly discharged before a month's service shall be entitled to recover a month's wages in addition to the wages earned, does not apply to seamen in the coastwise trade not signed before a shipping commissioner.

2. SAME—WAGES—SETTLEMENT.

Where seamen, after their discharge, through their attorney made a settlement of their wages with the master, agreeing upon the time when their service ended, they are bound thereby, and cannot thereafter main-tain an action to recover additional wages.

In Admiralty. Suit by seamen to recover wages.

Thomas W. Vose, for libelants.
Benj. Thompson, for claimant.

HALE, District Judge. This action in rem is brought by three sea-men of the schooner George B. Ferguson, who claim in their libel that:

"They each became entitled to demand wages for the whole voyage of the said schooner, or, as provided in section 4527 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 3077], one month's wages in addition to any wages each may have earned, to wit, the sum of twenty-five dollars to each of said seamen."

The schooner is a two-masted schooner of 137 tons, engaged in the coasting trade between Bangor, Me., and New York City. The libel-ants were shipped by the master of the Ferguson at the port of New York, July 28, 1904. They each signed shipping articles which stipu-lated for a voyage to one or more eastern ports coastwise, and such other ports and places as the master might direct, and back to final port of discharge in the United States, for a term not exceeding three calen-dar months, at $25 per month. They were in the service of the vessel until about 8 o'clock in the morning of August 15, 1904, at which time the schooner was in Bangor. They claim in their libel that:

"While the said schooner was lying at Bangor aforesaid, on the 15th day of August, 1904, the said master unjustly and without any cause, and without the consent of the libelants, against their will, turned them ashore and would not permit them to perform the remainder of the voyage."

In reference to the claim for one month's wages, under Rev. St. U. S. § 4527, the learned counsel for the libelants says:

"After a very careful examination of the statutes, we are compelled to admit that coastwise vessels are excluded in the shipping commissioners' act, approved June 7, 1872, and the acts of June 9, 1874, June 19, 1886, and February 18, 1895, and therefore that we are not entitled to the month's unearned wages, under section 4527 of the United States Statutes. See opinion of Judge Fox, and cases cited by him, in U. S. v. Bain, 2 Hask. 464, 5 Fed. 192."

The conclusion of the learned counsel, thus frankly and fully stated, is clearly correct, at least, so far as it relates to seamen in the coastwise trade not shipped by a shipping commissioner.

A claim is made, however, for wages for two days to each man. It becomes material, therefore, to examine the testimony with reference to the settlement with the men on August 15, 1904, after their alleged discharge. With reference to the settlement, Captain Maddocks, of the schooner, testifies that the attorney for the men came aboard his vessel on the afternoon of August 15th, and that, after conversation with reference to the food which had been supplied to the men:

"He says: 'I have come here to settle this matter up. If you want to settle this matter up, I will take wages to settle balance and give you a receipt.' * * * He sat right down there and took a piece of paper off desk or out of pocket and he figured up wages from the 29th up to the 14th, that would be to Sunday night."

The captain further testifies that he gave them the balance of $3.83, and took a receipt "in full payment of balance of wages due John Nagle, John Miller and Herman Blomquist to August 14, 1904," and that the attorney said as he left, "This is in full." Mr. Snare, the attorney for the men, is a lawyer of high character and shows evident intention to tell the whole truth. He testifies:

"I had figured it up with the men at the office before coming down, and I may have gone over it then with the captain, but I don't recall that I did."

He further testifies that:

"The captain's statement was just a little short of what the men said they should have, but my receipt I gave— I thought there was not difference enough to make a great deal of difference."

The claim is now made that two days' wages were left unpaid, and that the libelants can recover for these two days' wages in this proceeding. I cannot sustain this contention. I do not decide, whether or not, by any straining of the meaning of words, this claim can or not be held to be stated in the language of the libel which I have quoted. Even though, by any possibility, evidence of this claim for two days' wages could be received under the libel, or under an amendment which might have been allowed, I find that the testimony clearly shows that it was not the intention of the parties to make a demand for any wages beyond that for which a settlement was made. Under the testimony, I

am forced to conclude that the attorney for the libelants went aboard the vessel on August 15th for the purposes of effecting a settlement; he had already figured up with the men what was due them, and went to the schooner, as he said, "to settle this matter up." While it is perfectly true that the receipt is open to explanation, it is equally true that the testimony leaves the mind of the court without any doubt that both parties figured on the basis that their contract had terminated on August 14th. And the court will not put any other construction upon the contract than that which the parties have placed upon it. The men made their settlement advisedly and with the aid of learned and skillful counsel. The evidence indicates that they did not intend to bring suit for wages beyond the time of the receipt. When, however, they found that they could not in law recover the penalty under the statute, they were under a great temptation to take another view of the settlement which they had made. But courts should be slow to allow litigants to put a different construction upon a contract or settlement in the courts from that which they have placed upon it by their actions in the premises. I must come to the conclusion, therefore, that, whether the libelants were improperly discharged or not, they have made a settlement by which they must be bound. In this view of the case, I must order the libel to be dismissed. I shall not, however, give costs against the libelants, but decree that each party pay his own costs.

The entry may be: Libel dismissed, without costs to either party.