CAFFYN v. PEABODY et al.

(District Court, W. D. Washington, N. D. December 13, 1906.)

No. 3,093.

1. SEAMEN—SUIT FOR WAGES—WRONGFUL DISCHARGE.

Evidence considered, and *held* insufficient to justify the discharge of an engineer of a steamer before the expiration of his term of service on the ground that he was incompetent by reason of excessive drinking.

2. RELEASE—VALIDITY—SEAMEN—DISCHARGE.

A release in full signed by a seaman on his wrongful discharge is not binding on him where it was not voluntarily given, but was required by the vessel owners, and he was at the time of his discharge in Alaska, at a place where he could not obtain legal redress and without money, and received no more than the amount of wages admittedly due him.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Release, § 33.]

3. SEAMEN—WAGES—ALLOWANCE FOR WRONGFUL DISCHARGE.

    By analogy to Rev. St. § 4527 [U. S. Comp. St. 1901, p. 3077], a court of admiralty may, when equitable, award a seaman wrongfully discharged an additional month's wages, although he served more than a month, and is not therefore within the terms of the statute.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Seamen, §§ 76–85.]

Libel in personam to recover wages and traveling expenses under a written contract by which the libelant was hired as chief engineer of a steamer on the Yukon river for the season of 1905, with wages at the rate of $250 per month, and traveling expenses for return from the Yukon river to Seattle. Decree for libelant.

James Kiefer, for libelant.
John F. Miller, for respondents.

HANFORD, District Judge. The pleadings admit the execution and validity of the contract sued on, and that the libelant served as chief engineer of the steamboat Schwatka on one trip from St. Michael to Dawson and return, and that on the 8th day of August, 1905, he was discharged and paid the full amount of wages earned at the contract rate up to that date, and that the respondents refused to pay him any additional sum either on account of wages or for traveling expenses.

Two defenses are pleaded and relied upon, viz: (1) The answer alleges that libelant after his employment became addicted to the excessive use of intoxicants, and by reason thereof he was incompetent to perform the duties of chief engineer of the steamer, and irresponsible. (2) Upon receiving the amount of wages earned at the date of his discharge the libelant gave a receipt for the same as full payment and satisfaction of all claims under his contract.

The evidence proves to my satisfaction that the libelant is a competent marine engineer, and that, while he was in the service of the respondents as chief engineer of the Schwatka, he took good care of the engines and machinery, and that there was no delay nor mishap attributable to negligence on his part. The steamer was delayed by other causes at Ft. Gibbon, and at Tanana, and while not required to be on duty the libelant went ashore and drank whisky, and was intoxicated. This I find to be true, notwithstanding a general and explicit denial in the testimony given by the libelant as a witness for himself. I also find, upon his own admissions, that he drank two glasses of beer daily during the time of his service as engineer of the Schwatka. As a witness the libelant is impeached by reason of statements in his testimony which are inconsistent with his own admissions and with established facts. I have not stated the case as strongly against the libelant as the preponderating evidence justifies. There is an issue, raised by conflicting testimony, as to whether the libelant was partially intoxicated at different times when he was on duty. The affirmative testimony of one of the respondents on this issue is controverted by the testimony of the libelant. The burden of proof is on the side of the respondents, and to decide in their favor the evidence should be sufficient to create a positive belief in the mind of the court. This is so for the reason that a finding adverse to the libelant may ruin his professional reputation and create an impediment which will prevent

him from obtaining employment as an engineer. With these considerations in mind, I have carefully weighed all the evidence, and I deem it insufficient to convict the libelant of drunkenness when on duty.

Besides the libelant and one of the respondents, only two other witnesses were examined. I consider Capt. Green and Mr. Edwards to be competent, disinterested, and truthful witnesses. The former was the Schwatka's pilot on the trip referred to. He was called as a witness in behalf of the libelant; and, although he gave only negative testimony to the effect that he had no knowledge of drunkenness on the part of the libelant, I deem it important because, if the Chief Engineer had been habitually drunk, or partially drunk when on duty, the pilot would certainly have acquired definite knowledge of that important fact. Mr. Edwards was called to testify in behalf of the respondents, and gave testimony to the effect that he was watchman on the trip referred to; that he had a pretty good idea of what was going on aboard; that he knew of the libelant's drinking, and being drunk on shore, when the boat was not under way, and on his cross-examination he said: "I did not see Mr. Caffyn drunk on duty; it was when the boat was stopped." It is not shown that the libelant was at any time reprimanded or admonished, nor that his indulgence in the use of intoxicants was in any way taken notice of by the captain or owners of the boat, until used as a pretext for his discharge. The gravamen of the accusation against the libelant is that by excessive drinking he became and was incompetent and irresponsible, and it is my conclusion that this has not been proved by a preponderance of the evidence. When the libelant was discharged and paid at St. Michael, he gave a receipt in the following words:

"St. Michaels, Alaska, August 8, 1905.

"Received of Steamer Schwatka the sum of three hundred seven dollars and forty five cents ($307.45) in full payment of all wages and claims of whatsoever nature against Steamer Schwatka.

"[Signed]   F. J. Caffyn   [Seal.]"

This was exacted by respondents; that is to say, the libelant was required to sign it in order to get any money on account of his wages, notwithstanding he protested against any relinquishment of his rights under his contract, and it was not understood as a voluntary waiver on his part of any rights. The evidence shows that he was destitute of money and was unable to obtain judicial process at St. Michael for the protection of his legal rights. According to the testimony, he was given an option to take the amount tendered and sign this receipt or litigate; but under the circumstances he did not have an option because he did not have the means to litigate. Tested by common-law principles, the receipt is not binding upon the parties as a release of any debt or liability, because by the answer it is not pleaded as a contract by specialty, and, in fact, it is not a sealed instrument. At most, it can only be considered as written evidence of an accord and satisfaction, which may be contradicted, and it has been contradicted and its falsity clearly established. The evidence proves that the libelant did not assent to any agreement canceling the contract under which he went to work, or varying its terms. Furthermore, the amount paid

was no more than the amount admitted to be due for services up to the date of the payment, and there was no consideration to support an agreement abridging rights stipulated for in the contract.

It has been proved by uncontradicted evidence that the libelant's expenses returning to Seattle amounted to $75, which he is entitled to recover by the terms of his contract, and, having been discharged without his consent, and without fault on his part justifying such discharge, the court allows him as compensation one additional month's wages. I hold this award to be legal and just, by analogy to the measure of compensation prescribed by section 4527, U. S. Rev. St. [U. S. Comp. St. 1901, p. 3077].