## WILSON v. MANHATTAN CANNING CO.

(District Court, W. D. Washington, N. D.    January, 1914.)

### No. 2477.

1. SEAMEN (§ 6*)—CONTRACT OF EMPLOYMENT—"COMMENCEMENT OF VOYAGE"—ANCHORAGE AFTER LOADING.

A voyage commenced when a vessel left her dock fully loaded to go to an anchorage, although she remained at such anchorage two days before proceeding to sea.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 8–18; Dec. Dig. § 6.*]

2. SEAMEN (§§ 11, 16*)—INJURY IN SERVICE—LIABILITY OF VESSEL FOR COST OF CURE AND WAGES.

Libelant shipped as cook on a vessel which, being fully loaded, left her loading berth and was towed to an anchorage some distance from shore. On the same day libelant, who had been at work for two days, fell and was injured without fault on his part. He was not discharged nor paid his wages, but was sent to a hospital and another cook employed in his place. _Held_, that the voyage had commenced, and that libelant was entitled to recover his medical and hospital expenses and wages to the end of the voyage.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 39–44, 56–65, 187; Dec. Dig. §§ 11, 16.*]

In Admiralty. Suit by J. W. Wilson against the Manhattan Canning Company. On exceptions to findings and conclusions of commissioner. Exceptions overruled, and decree for libelant.

See, also, 205 Fed. 996.

James Kiefer, of Seattle, Wash., for libelant.

Dorr & Hadley, of Seattle, Wash., for respondent.

NETERER, District Judge. The libelant commenced this action to recover wages as seaman on board the brig Harriet G., and for hospital expenses and medical attendance in effecting a cure for the injury received on board. Respondent denies performance of services as seaman, denies all liability, and further alleges that libelant had violated conditions of the shipping articles and was discharged before the voyage began. The provision of the shipping articles alleged to have been violated is as follows:

"No * * * grog allowed, and none to be brought on board by the crew."

Libelant took on board a five gallon cask of whisky, which was taken possession of by the master, the seal of which was unbroken. No breach of contract was asserted at the time by the respondent, nor was anything done other than the taking possession of the whisky by the master, and the matter was treated as a breach of discipline. The testimony is conclusive that libelant was employed as cook on board the brig Harriet G. at $80 per month, for a voyage from Seattle, Wash., to Port Haiden, Alaska, and return, not exceeding six months. The shipping articles were signed by the libelant on the 21st day of April, 1913. On the 23d day of April, 1913, about 2 o'clock p. m., the brig in tow of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

a tug left the dock in the port of Seattle, and was towed to a buoy in the bay; the vessel having been fully loaded. After the vessel left the dock libelant, in passing from the aft part of the vessel to go forward to the galley, sustained the injury. An officer of the ship, being advised of the accident, procured a launch and sent libelant ashore, and caused him to be taken to Providence Hospital for treatment. The master did not furnish libelant a certificate entitling him to the services of a marine doctor.

An examination of the testimony convinces me that libelant was not in an intoxicated condition; that nothing was said to libelant at the time, nor anything done with relation thereto. There was no conduct on the part of libelant disclosed by the testimony which in any way disqualified him from performing his duties, and the master would not have been justified in discharging him. The Villa v. Herman (D. C.) 101 Fed. 132.

[1] Did the voyage commence when the brig pulled away from the dock and proceeded to the buoy on the afternoon of April 23d, or did it not commence until the 25th, when it left the buoy and proceeded directly on its voyage? Carver's Carriage by Sea (5th Ed.) § 148, states the rule to be that if a vessel is lying at her port loading, and has to move from the place at which she is lying to go to a loading berth, the "voyage" commences as soon as she breaks ground to go to that berth. Reason would suggest that a voyage at least could be said to commence when a vessel leaves her moorings loaded, and proceeds out into the open water, even though she might anchor at the buoy for several days. The Supreme Court of Massachusetts, in Bowen v. Hope Insurance Co., 37 Mass. 275, 32 Am. Dec. 213, lays down the rule that a voyage is begun when the vessel leaves her moorings, proceeds down the stream, and goes to an anchorage to lie for favorable winds.

"That the vessel has moved on the prosecution of the voyage, whether in the sea, or an arm of the sea, whether in a river or a canal communicating with the sea, enables us to say she is on her passage, and exposed to the perils of such passage. This vessel had *sailed* within the. case of Bond v. Nutt (Cowp. 601, 607). Lord Mansfield there mentions a ship as having commenced her voyage though she had barely begun to sail, and was stopped by an embargo. * * * In short, the least locomotion with readiness of equipment and clearance satisfies a warranty to sail. Pettigrew v. Pringle, 3 Barn. & Adolph. 514." Union Insurance Co. v. Tysen, 3 Hill (N. Y.) 118; Cochrane v. Fisher, 1 Crompt., Mees. & Rosc. 809.

[2] There is no testimony in this case that libelant was discharged. His employment was admitted. The testimony shows that he had worked at least two days. Section 4529, Revised Statutes (U. S. Comp. St. 1901, p. 3077) provides:

"The master * * * shall pay to every seaman his wages * * * at the time of his discharge."

No wages were paid libelant, nor anything done with relation to discharge other than taking libelant ashore and employing another cook. The employment of a cook was necessary. The libelant was incapacitated by the injury, and a duty devolved upon the respondent to effect his cure and pay his wages to the end of the voyage. The Osce-

ola, 189 U. S. 158, 23 Sup. Ct. 483, 47 L. Ed. 760; The New York, 204 Fed. 764, 123 C. C. A. 214; The City of Alexandria (D. C.) 17 Fed. 390; The Fullerton, 167 Fed. 1, 92 C. C. A. 463; The Nyack, 199 Fed. 383, 118 C. C. A. 67.

The contention that section 4527, Rev. St., applies to this case, and that libelant cannot in any event recover more than one month's wages under the findings upon the facts, cannot be sustained. This section provides:

"Any seaman who has signed an agreement and is afterwards discharged before the commencement of the voyage or before one month's wages are earned, * * * shall be entitled to receive from the master * * * in addition to any wages he may have earned, a sum equal in amount to one month's wages as compensation."

The voyage having commenced, and libelant not having been discharged, this section has no application.

The Staghound and The Gamecock (D. C.) 97 Fed. 973, The St. Paul (D. C.) 77 Fed. 998, and Raymond v. Ella S. Thayer (D. C.) 40 Fed. 902, are readily distinguished.

There is no dispute as to the expenses incurred in effecting a cure, to wit, $30 for hospital service, and $50 for medical attendance.

I think that the report of the commissioner in finding that libelant is entitled to recover his wages from April 21, 1913, to October 5, 1913, to wit, $440 and $80.60 for hospital and medical attendance, a total of $520, should be sustained.

A decree may be entered accordingly.