## THE HOWICK HALL.

(District Court, E. D. Louisiana, New Orleans Division. May 30, 1925.)

### No. 16785.

1. **Seamen ☞7—Provision of shipping articles, making any change in working rules and wages retroactive, held not applicable to arbitrary reduction of wages.**

Provision of shipping articles, making any change in working rules and wages retroactive, *held* applicable only to agreement to which seamen were actually or constructively parties, and not to arbitrary reduction of wages; but, if it did, it would be void for lack of mutuality.

2. **Contracts ☞127(2)—Arbitration contracts, making award in future disputes conclusive, held void, especially in case of seamen's wage contracts.**

Contracts for arbitration of future disputes, making award conclusive, are void, especially when applied to contracts of seamen's wages; sailors being wards of admiralty, whose rights courts jealously protect.

3. **Seamen ☞5—Provision of shipping articles held not "submission in writing" of controversy, within statute.**

Provision of shipping articles that controversies between seamen and master should be heard by shipping commissioner, whose determination should be conclusive, *held* not written submission of controversy, within Rev. St. § 4554 (Comp. St. § 8343), authorizing shipping commissioners to · decide questions which both parties agree to submit in writing to him.

4. **Seamen ☞5—Captain's verbal statement to shipping commissioner held not a "submission to arbitration."**

Captain's verbal statement of controversy with seamen respecting wages to shipping commissioner *held* not submission to arbitration.

In Admiralty. Suit by Patrick Monahan and others against the Steamship Howick Hall for wages as seamen. Decree for libelants.

W. J. & H. W. Waguespack, of New Orleans, La., for libelants.

Denegre, Leovy & Chaffe, of New Orleans, La., for respondent.

FOSTER, Circuit Judge (sitting as District Judge). · This is a libel by a number of seamen for wages. The facts are undisputed. The libelants shipped on the steamship Howick Hall at New Orleans, and signed articles April 19, 1921, for a voyage to Yokohama, Japan, and back to a port in the United States. The rate of wages stipulated in the articles was $100 per month for one of them, $95 for another, and $85 for the others. Attached to and made part of the shipping articles was a clause in these words:

"In the event of there being any change in the working rules and wages, same shall be retroactive and apply to these articles."

And another clause:

"It is further understood and agreed that any question whatsoever between master, consignee, agent, or owners of the above-named vessel, and any of the undersigned seamen or mariners, shall be heard by the shipping commissioner or consul appointed under the authority of the laws of the United States, and that every award so made by him shall be binding upon parties, and shall in any legal proceeding which may be taken in the matter before any court of justice be deemed conclusive as to the rights of the parties as to such questions or subject of dispute."

At the time of shipping, the wages stipulated were according to a schedule agreed to by the American Steamship Owners' Association, of which the owner of the Howick Hall was a member, and the seamen's unions. This agreement expired May 1, 1921, and negotiations were being conducted for the adoption of a new schedule. No new schedule was in fact adopted. In August, 1921, without having reached an agreement with the seamen's unions, the American Steamship Owners' Association adopted a scale of wages and declared it to be retroactive to May 1, 1921. According to this scale a reduction was made in wages for work of the same class as that performed by libelants of from $12.50 to $15 per month. The vessel returned to New Orleans.

The master of the ship then took up with a deputy shipping commissioner the question of paying off the crew and submitted the new scale above referred to. He agreed with the captain, and told the crew that, in accordance with the clause of the shipping articles first above referred to, they were obliged to accept payment from May 1st at the rate stated in the new schedule. They protested verbally, but most of them accepted payment and signed the mutual release usual in all cases where seamen are paid off before a shipping commissioner. As to this the deputy shipping commissioner advised them to accept the pay and to sign the release, and told them it would not be binding on them, and they might go to court, if they

were so minded, to collect any balance they thought due them.

[1] It is evident to my mind that the master and the shipping commissioner wrongly construed the clause in question. This clearly had reference to an agreement changing the wages or working conditions to which libelants were actually or constructively parties. I have no doubt that, had the officers of the seamen's unions and the shipowners' association reached an agreement, both sides would have been bound by it, and the clause could have been given effect; but to allow the shipowner or the captain to arbitrarily reduce wages would be going too far, and to give the clause that meaning would render it void for lack of mutuality. See Jones v. U. S. (D. C.) 284 F. 721.

[2] Respondent relies, also, on the clause making the shipping commissioner an arbitrator in any dispute that might arise between the crew and the' master. It is well settled that contracts providing, before the dispute arises, for arbitration, and making the award of the arbitrator conclusive, are void. Judge Hough, when District Judge, so held in an exhaustive and learned opinion, in which he reviewed the jurisprudence both of England and the United States, and I can do no better than to refer to that decision and the authorities therein cited. United States Asphalt Ref. Co. v. Trinidad Lake Pet. Co. (D. C.) 222 F. 1006. When applied to a contract of seamen's wages, the rule is all the more to be enforced. Sailors are wards of the admiralty, and the courts jealously protect their rights. It is notorious that sailors, when about to sign up for a new voyage, are usually destitute, and will agree to any stipulation in the shipping articles, without giving its probable effect the slightest consideration.

[3] Respondents further rely on section 4554, Rev. Stat. (Comp. St. § 8343), which vests authority in shipping commissioners to decide questions between the master and the crew, which both parties agree to submit in writing to him. This section has application only to such controversies as are actually submitted in writing to the commissioner. It cannot be said that the clause in the contract above referred to had the effect of a submission in writing of the particular controversy here developed. The W. F. Babcock, 85 F. 978, 29 C. C. A. 514.

[4] Furthermore, it is quite evident that there was no submission in this case at all, and no actual arbitration or consideration of the contentions of both sides by the deputy shipping commissioner. The captain merely stated his case verbally, and the commissioner and deputy commissioner agreed with him, and required the seamen to accept their wages at the rates fixed by the captain. There were none of the elements of an arbitration in this proceeding.

Libelants are entitled to recover the difference between the wages stipulated in the shipping articles and the rates at which they were paid. There will be a decree to that effect; libelants to have interest at the rate of 6 per cent. per annum from the date they were paid off. Respondent to pay all costs.