## THE STEEL TRADER.

(District Court, E. D. Louisiana. December 4, 1925. Rehearing Denied December 31, 1925.)

No. 16970.

1. Seamen ⊜ 19—Seaman, refusing consent before start of voyage, to alteration of wage clause, entitled to full wages, where discharged at first port of call for such refusal.

Seaman, refusing before commencement of voyage to consent to change of signed articles, was not subject to discharge at first port of call because of such refusal, and where so discharged was entitled to wages to end of voyage; the penalty of one month's pay for wrongful discharge, provided by Rev. St. § 4527 (Comp. St. § 8318), applying only where discharge is made before commencement of voyage, and section 4529 (Comp. St. § 8320) not being applicable.

On Motion for Rehearing.

2. Constitutional law ⊜ 70(1)—Courts have no authority to read specific condition out of statute, or implied one into it.

Courts have no authority to read specific condition out of statute, or implied one into it.

In Admiralty. Libel by Donald J. Adams against the steamship Steel Trader. Decree for libelant.

Eugene S. Hayford, of New Orleans, La., for libelant.

Denegre, Leovy & Chaffe and Jas. H. Bruns, all of New Orleans, La., for defendant.

BURNS, District Judge. Libelant shipped as oiler on the American steamship Steel Trader, having signed articles November 29, 1921, though employed on November 27, 1921, at the rate of $80 per month for a round trip from New Orleans, via Port Arthur, Tex., to Piræus, Greece, and East Indian ports, and return to an Atlantic or Gulf port, sailing December 8, 1921, arriving at Port Arthur, the first call port, December 12, 1921, where he was discharged and paid off up to and including that date. He alleges he refused to sign the customary mutual release, because he was discharged without just cause and in violation of the shipping articles; that he is due wages up to May 19, 1922, the arrival date of the vessel's return to New Orleans, amounting to $414.50, and subsistence at $2.60 per day for the same period, according to contract.

Claimant's answer is in effect a general denial, with special allegations: That on December 5, 1921, there was inserted a certain wage provision as one of the voyage clauses in the shipping articles, drafted and inserted as a rider thereon, with the consent of the shipping commissioner. That, when it was read to the crew by the shipping commissioner, libelant, Adams, refused to consent thereto, and a note to that effect was made upon the voyage clause rider. That as libelant continued to refuse consent when the vessel arrived at Port Arthur, he was discharged and paid off by the master according to R. S. § 4527 (7 U. S. Comp. Stat. § 8318; Barnes' Fed. Code, § 7548): "Any seaman who has signed an agreement and is afterward discharged before the commencement of the voyage or before one month's wages are earned, without fault on his part justifying such discharge, and without his consent, shall be entitled to receive from the master or owner, in addition to any wages he may have earned, a sum equal in amount to one month's wages as compensation, and may, on adducing evidence satisfactory to the court hearing the case, of having been improperly discharged, recover such compensation as if it were wages duly earned." That he was paid an extra month's wages of $80, in addition to the earned wages, making a total of $120.87, for which he gave a receipt before the United States shipping commissioner.

[1] The wage provision, inserted as a voyage clause in the articles after he was signed, to which libelant refused to consent, reads: "Should any changes in the scale of wages of the crew employed on vessel, whose owners are members of the American Steamship Owners' Association, be made after the departure of this vessel, such scale of wages shall prevail on this vessel from date new scale is put into effect by the American Steamship Owners' Association." ·

Considering that libelant had signed the articles on November 29, 1921, and expressly refused to consent to the voyage clause, which was inserted on December 5, while the vessel was still in port, and before the voyage was commenced on December 8, 1921, he should have been then discharged and not thereafter, when he was discharged for the sole reason that he persisted in refusing to consent while at sea between New Orleans and Port Arthur, Tex., where the ship arrived December 12, 1925. Unquestionably the seaman had a right to stand upon the terms of his contract as·originally signed, and he was within his right in refusing to consent to the objectionable clause.

Libelant contends that the action of the master in commencing the voyage and awaiting arrival at a port of call, there to discharge him, was a breach of his contract for which damages will lie, which should be measured by the wages he would have earned at the completion of the voyage, up to and including May 22, 1922, and subsistence; that the decision in the Howick Hall Case (No. 16785 of the docket) 10 F.(2d) 162, is decisive of this controversy; that seamen are the wards of the court, whose wage contracts will be jealously protected, in keeping with the general policy of maritime law; that the penalty of one month's wages prescribed by R. S. § 4527, is not the sole remedy afforded him, as the claimant insists; that R. S. § 4529 (Comp. St. § 8320), more properly applies; that the cases cited by claimant in support of its contention that the penalty of one month's wages discharges the vessel and owner of further liability are not in point; that the decisions in The Inland (D. C.) 271 F. 1008, Brown v. U. S. (D. C.) 283 F. 425, The Meton (C. C. A.) 287 F. 531, The George B. Ferguson (D. C.) 140 F. 955, and The Staghound and the Gamecock (D. C.) 97 F. 973, do not support claimant's contention.

Clearly the libelant was entitled to the protection of his rights of contract in the shipping articles as he signed them, by which his employment was assured him for a period of some four or more months at a fixed wage and subsistence. The cases cited on both sides, including the Wilson Case (D. C.) 210 F. 898, in which there was no discharge of the seaman, are not sufficiently in point to

sustain the application of the penalties of either R. S. §§ 4527, or 4529, to the circumstances here presented, whether the penalties prescribed may be intended in the nature of statutory damages for breach of contract or not.

Congress could not have intended to deny seaman equal protection of the law, as applied to contracts generally, by the enactment of these statutes, intended to aid and give special protection to seamen. The decision of the late Circuit Judge Pardee, in The City of New Orleans (C. C.) 33 F. 683, is more nearly applicable to the situation here presented. In that case, where some roustabouts shipped on a river packet from Cairo, Ill., to New Orleans, and return to Cairo, were discharged on arrival at New Orleans, and paid their wages up to time of arrival, by direction of the owner, because the voyage was broken up on account of ice in the river at Cairo, held, that they were entitled to wages for the round trip. Although section 4527 had then been subsisting law since 1877, the case was decided in 1888, without any reference to it whatever.

Likewise in the T. P. Leathers Case, Natchez v. Price (C. C. A. 5th Circuit) 74 F. 845, 21 C. C. A. 145, where a roustabout shipped for a voyage from New Orleans to Waterloo and return, was discharged because incapacitated by a freezing of his hands by ice on the return trip at Vicksburg the wages and damages allowed him by the District Court were denied on appeal only because on his own testimony the libelant had voluntarily left the boat and was not discharged against his consent. Likewise in The White Seal (C. C. A. 9th C. )194 F. 402, 114 C. C. A. 364, where the evidence was held to sustain a finding of the District Court that libelant was discharged without cause from his position as chief engineer of a steamer before the end of his contract term and entitled him to recover wages to the end of the term.

Considering that it does not appear in the evidence of record that libelant was a party constructively, as a member of a union or otherwise, to any general seamen's strike, or in any wise bound by any wage agreement that might have been reached between a union and the ship owners, or by any arbitrary decision of the steamship owners, so that his status was measurable only by his individual contract, appearing on the face of shipping articles at the time of signing; that on his direct examination the master testified that Adams was paid off at Port Arthur, Tex., on December 12, 1921, simply because "he would not agree to the wage scale," which means nothing except that he stood upon his contract as he made it—it is concluded that the libelant is entitled to the relief prayed for up to the amount of his wages from December 13, 1921, to May 19, 1922, inclusive. The amount claimed for subsistence is not sustained by evidence.

Accordingly there will be a decree for libelant in the sum of $414.50, less a credit of the $80 already paid him as a penalty, with 6 per cent. interest from May 19, 1922. Costs to follow decree.

### On Motion for Rehearing.

This cause was heard upon a motion for rehearing filed by claimant, in support of which its proctor contends that, since the seaman was admittedly one who had signed an agreement and was afterwards discharged before one month's wages were earned, without-fault on his part justifying such discharge, and paid all the wages he had earned, together with a sum in addition equal to one month's wages as compensation, the case falls within the very words of R. S. § 4527. He insists that the statute must be applied in this case as providing the sole remedy available to the libelant, or it must be read out of existence or declared unconstitutional. In his view the very words of the statute might be used to describe Adams, as follows: "Any seaman who has signed an agreement and is afterward discharged * * * before one month's wages are earned, without fault on his part justifying such discharge, and without his consent." He thus seeks to ignore or read out of existence the first of the two specific conditions upon which the application of the statute depends.

In my view, the first condition contemplates a voyage before the commencement of which the seaman is wrongfully discharged. The second does not contemplate an immediate voyage, as where the vessel is in dock or otherwise delayed, and the seaman is wrongfully discharged before the month's wages are earned. If Congress had intended the application of the statute after as well as before a "voyage is commenced," it would, no doubt, have either omitted the first condition, thus merely prescribing that the extra compensation should be paid as damages for the breach upon a wrongful discharge "before one month's wages are earned," or, in the alternative, have qualified the second condition by specifically prescribing for the extra compensation upon a wrongful discharge

"before one month's wages are earned" after a voyage has commenced.

[2] As the statute stands, I am persuaded that the second condition is controlled, or at least qualified, by the first. Certainly the courts have no authority either to read a specific condition out of a statute, or a supposedly implied one into it, and therefore, when a case such as this is presented, where the wrongful discharge occurred after the commencement of the voyage contemplated by the contract, the statute cannot be applied. I find support in this view in the fact that section 21 of the original statute (Act June 7, 1872, 17 Stat. 266) was designed to clear up confusion in the law regulating the discharge of seamen before a voyage is commenced, as it subsisted prior to 1872 as one of a series in that comprehensive act containing 68 sections, variously regulating the method of employment, discipline, and discharge of seamen. The Supreme Court in Inter-Island Steam Navigation Co. v. Byrne, 239 U. S. 459, 36 S. Ct. 132, 60 L. Ed. 382, referred to its purpose as being fundamentally to afford protection to seamen in respect to their treatment and wages.

That the purpose of Congress, with respect to the wrongful discharge of seamen before the voyage commenced, was to make a definite rule of compensation for the breach of contract, seems manifest from the pre-existing confusion upon this point reflected in the jurisprudence and text-books of that time; whereas, there was no doubt, with respect to a discharge after the commencement of a voyage, that damages would be recoverable in an action either at common law or by a libel in admiralty for a breach of contract, to be regulated by the circumstances of the case. This seems certain from the significant omission by Congress of any statutory provision with respect to wrongful discharges occurring after the commencement of voyages or after one month's pay has been earned.

Claimant's proctor gives a fair summary of this pre-existing condition of the law in his brief, to show that this law is not peculiar to the United States, but is based upon similar European maritime laws and rules, which were the forerunners of the act of Congress, and from these it appears that all doubt, uncertainty, and indefiniteness was in respect to the measure of damages for a wrongful discharge before the voyage commenced, and not thereafter. These show that a clear distinction was always recognized. I quote from his brief the following excerpts:

In the Marine Ordinances of France, book III, tit. IV, art. X, p. XXXII, vol. 2 of Peters' Admiralty Decisions, it was provided: "If a master dismiss a mariner without a sufficient cause before the voyage is begun, he must pay him one third of his wages; and if after the voyage is begun, he shall pay his whole wages, together with his charges for returning to the place of his departure."

In article III of the same book and title the Ordinances provided: "If by the fault of the owners, masters or merchants, a voyage be broke before departure of the ship, the seamen hired for the voyage shall be paid for the time taken up in rigging and equipping the ship, and have one-fourth of their wages."

Article XLI of the Laws of the Hanse Towns, 1 Peters' Admiralty Decisions, p. C V, provided: "If a mariner behaves ill the master may turn him off; but if he discharges him for no reason before the voyage begins, he shall pay him a third part of his wages, but shall not charge it to the ship's account."

In the Rights and Duties of Merchant Seamen, by Curtis, Boston, 1841, that then leading authority, at page 299, said: "In regard to the measure of damages, when a seaman is wrongfully discharged, the maritime law of continental Europe makes a distinction between such discharge abroad, and when made before the vessel sails. If discharged in a foreign country, the entire wages, with the expenses of return, are given; if discharged before the vessel sails, only a third of the wages that might have been earned are awarded, for the reason that the mariner can readily find other employment."

At page 299–301 he says in part: "It does not appear that this proportion of one-third has been adopted in our law in cases of wrongful discharge before the vessel sails. Damages would undoubtedly be recoverable, in an action on the case at common law, or by a libel in the Admiralty, for the breach of the contract, to be regulated by the circumstances of the case."

Parsons, in 1869, in volume 2, p. 50, of his Law of Shipping, stated the rule: "For the settled rule appears to be, that if the voyage is broken up, or the seamen are dismissed without cause before the voyage begins, they have their wages for the time they serve, and a reasonable compensation for special damages."

A reading of the Laws of Shipping of the time before 1872, Parsons, Flanders, Dixon, Abbott, will show into what confusion this question had come. It is safe to say, there-

fore, that Congress enacted R. S. § 4527, to "clear up that confusion and to provide an exact measure of damages for such cases."

The briefs filed here purport to exhaust our federal jurisprudence since 1872, and yet in no case cited is the precise question decided as to whether or not R. S. § 4527, provides the exclusive and sole remedy afforded seamen wrongfully discharged after the voyage is commenced. In some cases the parties so assumed, and apparently confined their claims to an extra month's compensation, and the courts made awards accordingly. In others, it appeared that the seamen had not been discharged at all, and therefore the statute did not apply. In others, the compensation was assessed by analogy to the statute, though it did not directly apply. See The Donna Lane (D. C.) 299 F. 977; The Great Canton (D. C.) 299 F. 953; The Quaker City (D. C.) 290 F. 409; The Meton (C. C. A.) 287 F. 531; Brown v. United States (D. C.) 283 F. 425; Hughes v. Southern Pacific Co. (D. C.) 274 F. 876; The Inland (D. C.) 271 F. 1008, affirmed without opinion (C. C. A.) 279 F. 1018; Manhattan Canning Co. v. Wilson (D. C.) 205 F. 996, 210 F. 898, affirmed 217 F. 41, 133 C. C. A. 322; The August Belmont (D. C.) 153 F. 639; Caffyn v. Peabody (D. C.) 149 F. 294; The George B. Ferguson (D. C.) 140 F. 955; The Joseph B. Thomas (D. C.) 136 F. 693; The John R. Bergen (D. C.) 122 F. 98; The Charles D. Lane (D. C.) 106 F. 746; The Villa Y. Herman (D. C.) 101 F. 132; The Staghound and the Gamecock (D. C.) 97 F. 973; The Glenesslin (D. C.) 96 F. 768; The Alice Blanchard (D. C.) 92 F. 519; The St. Paul (D. C.) 77 F. 998; The Caroline Miller (D. C.) 36 F. 507; The Schooner Jefferson Borden (D. C.) 6 F. 301.

This list includes all cases shown in the digests and in Shepard's Citations, where R. S. § 4527, has been cited, mentioned, or construed, and in none of them has the precise question been squarely presented and considered by the courts.

Claimant also cites, as decisive of this case, a decision in Calvin v. Huntley, 178 Mass. 29, 59 N. E. 435, where the state court considered R. S. § 4527, in determining its jurisdiction of seamen's claims for wages. What that court actually decided was that the statute did not contemplate imposing a penalty or forfeiture, but was designed to protect the seaman, and furnish a clear, well-defined rule of damages for a breach of contract as between him and the master or owner, by having a general law with refer-

ence to which the parties may be conclusively presumed to have contracted. This much is undoubtedly true, but it does not necessarily follow that the rule so adopted is to be stretched beyond its manifest purpose.

The necessary conclusion is that section 4527 does not apply to claims of seamen for compensation for damages for breach of their contracts by wrongful discharge without fault on their part justifying such discharge, and without their consent, after the commencement of the voyage. Accordingly the motion for rehearing will be denied, and a decree entered.

The inadvertent use of the words "as a penalty," in the concluding paragraph of the original memorandum opinion filed December 4, 1925, is to be taken as amended, so as to read "erroneously paid as extra compensation."