## HUGHES v. SOUTHERN PAC. CO.

(District Court, S. D. New York. May 13, 1918.)

No. A64-21.

1. Seamen ⊚═12—Coastwise seamen, signing shipping articles, may be discharged only by master before commissioner.

While seamen in the coastwise service are not required to be shipped before a commissioner and sign articles, they may be so signed, as authorized by Act April 11, 1904 (Comp. St. § 8293), and when that is done the statutes relating to such contracts apply, and under Rev. St. §§ 4549-4551 (Comp. St. §§ 8338-8340), a seaman can only be discharged by the master in the presence of a commissioner.

2. Seamen ⊚═19—Acceptance of unauthorized discharge does not entitle seaman to unearned wages.

Libelant, who had signed shipping articles as assistant engineer, was told before the voyage commenced by the chief engineer, who had no authority to discharge him, that he was discharged to make room for another, and left the vessel, but before she sailed was notified that he was not discharged, and directed to report for duty, which he refused to do. Held, that he was not discharged, and was not entitled to recover a month's wages, under Rev. St. § 4527 (Comp. St. § 8318).

In Admiralty. Suit by George H. Hughes against the Southern Pacific Company. Decree for respondent.

Silas B. Axtell, of New York City (Arthur Lavenburg, of New York City, of counsel), for libelant.

Kirlin, Woolsey & Hickox, of New York City (C. R. Hickox and L. De G. Potter, both of New York City, of counsel), for respondent.

WARD, Circuit Judge. [1] Shipping articles constitute a contract executed by and between the master of a vessel, as agent for the owners, and each member of the crew shipped before a United States shipping commissioner. The master virtute officii employs and discharges the seamen (Rev. Stat. U. S. § 4511, schedule table A [Comp. St. § 8300]), and the seaman when discharged must be discharged before a shipping commissioner (sections 4549-4551 [Comp. St. §§ 8338-8340]). Any other discharge is wrongful.

Shipping of seamen in the coastwise trade is not covered by these regulations, but the master and seamen may voluntarily use shipping articles before a United States shipping commissioner, and in that case the foregoing sections of the United States Revised Statutes apply, and also section 4527 (section 8318), which is sued on in this case. Chapter 1140, Laws of 1904 (Comp. St. § 8293).

⊚═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The libelant signed articles with the master of the steamship El Siglo before a United States shipping commissioner for a voyage from New York to Galveston and return, which ended September 20, 1917. September 24, at 9 a. m., he signed articles for a similar voyage as first assistant engineer. Between September 20 and 24 he worked aboard the steamer in port, at the request of the chief engineer, and for these services he was paid in full, receipting on the company's pay roll "in full for all demands against the steamship El Siglo and services rendered up to September 24, 1917." The respondent suggested that this is a release of any claim he might have for a wrongful discharge before or during the voyage signed for September 24. I think there is absolutely nothing in this claim.

The respondent claims that by its practice the superintending engineer, or in his absence his assistant, may ship and discharge seamen in the engine department of the company's steamers. This may be right, so far as the internal management of the company's business goes; that is, these officers may direct that a seaman shall be employed or discharged in the engine department, but the discharge, if he is employed under shipping articles before a United States shipping commissioner, must be in accordance with the direction of the law.

[2] A little before noon on September 24, Chief Engineer Nolan of the steamship El Siglo told the libelant that the old chief engineer was coming back to the steamer, and that he (Nolan) was to go out with him as first assistant engineer on the next voyage, so that there would be no further need for the libelant's services.

The libelant at once put his working clothes in his trunk, placed other belongings in a handbag, delivered the trunk to an expressman to be taken to the railroad station, where he intended to buy a ticket for his home in Chicago and check the trunk. He then went at once to the office of the superintending engineer, where he saw the assistant, Worrell, complaining that he had been improperly discharged. Worrell said that Nolan was going out as first assistant. Subsequently Worrell told Mr. Hebble, the superintending engineer, that the libelant had signed articles for the voyage, and Hebble at once sent a letter to the steamer, telling him that he was not discharged, but could go out as first assistant engineer. On the afternoon of the same day the libelant saw Mr. Hebble and was given this letter; but he refused to go, saying he had been "fired." Hebble said that he had not been discharged, and could go in accordance with his contract under the shipping articles. The libelant did not leave for Chicago until the 26th and could perfectly well have got his trunk from the station.

It is quite plain that the chief engineer of the steamer had no authority, either by law or by the company's practice, to discharge the libelant, and that the superintending engineer, when he had arranged to have Nolan go on the voyage as first assistant, did not know the libelant had signed shipping articles. I find as matter of fact that the libelant was not discharged, and he should have got his trunk back from the station and sailed on the voyage as first assistant engineer.

The libel is dismissed.