### THE SAN LUCAS.

### VAN NEWKIRK v. PACIFIC-ATLANTIC S. S. CO.
### No. 13209.

District Court, E. D. New York.
Nov. 28, 1932.

Charles Van Newkirk, libellant, in person.

MacFarland, Taylor & Costello, of New York City (Ernest A. Fintel, of New York City, of counsel), for respondent.

BYERS, District Judge.

A libel was filed on July 1, 1932, to recover $500.00 with interest and costs, by reason of the alleged unlawful discharge of the libellant on July 1, 1929, as assistant engineer on the steamship San Lucas, formerly the Eastern Knight.

Libellant has presented his cause in person, although the libel was prepared and filed by a proctor.

Articles seventh, eighth and ninth of the libel are as follows:

"Seventh: That on the said 1st day of July, 1929, at the port of New York, libellant was discharged from the services of the said Steamship 'San Lucas' by the Chief Engineer, without fault on his part, justifying such discharge, without his consent, against his will and in violation of the articles aforesaid.

"Eighth: That during the period of time libellant was on board the said vessel, he performed his services in a satisfactory and seamanlike manner and to the best of his ability and obeyed all lawful commands of his superior officers.

"Ninth: That by reason of the said unlawful discharge libellant has lost large sums of money which he otherwise would have earned."

The answer denies these and subsequent articles in the libel; special defenses are alleged, i. e., "payment off" before the Shipping Commissioner, accompanied by statement of no claim, etc.; and the bar of limitation.

The libellant has testified to: signing articles on May 31, 1929, for a 9 months' voyage from a port in the state of Washington; the completion of about one month of that voyage, and arrival at New York on or about June 30, 1929; and notification by the Chief Engineer that libellant would be superseded forthwith.

He has filed a typed statement with the Court, from which the following is quoted:

"I was appointed to the position of First Assistant Engineer of the S/S Eastern

Knight by Capt. Heinrici, Marine Superintendent, New York.

"I joined this vessel, as she was then called The Eastern Knight, known now as the San Lucas, in the early part of 1929 (April 5th). The ship was then on a voyage from the West Coast of the United States to the East Coast of the United States and returned to pay off on the Pacific Coast of the United States.

"I completed that voyage, namely the Westward Passage, and did pay off in Portland, Oregon, on or about the date of May 8, 1929. We traded in the Columbia River and Puget Sound for about twenty days with no articles. We then signed articles at Long View, Washington, for a voyage from the West Coast of the United States to the East Coast of the United States and to pay off in a port on the Pacific Coast of the United States June 1, 1929.

"I made the first half of the succeeding voyage, namely the Eastward passage, of the contract in question before the Court, from the Columbia River to the port of New York. About three days previous to our arriving at New York Captain Johnson told me he wanted to see my time book. I reported to the quarters of the Captain with my time book when he told me that the Chief Engineer had sent a wireless on his own responsibility to the Company's Agent in New York, The Oriental Navigation Company, requesting them to engage another engineer in my stead.

\* \* \*

"I went to the wireless Operator and asked him if he had sent such a message. The wireless operator assured me he had. As the message was sent without the sanction of the Captain and the Captain had informed me that the Chief Engineer acted on his own responsibility I did not know at the time what to do. So I simply (sic) did nothing that would precipitate any contention on the ship.

"Upon the ship's arrival in New York she was docked and moored at the wharf situated at the foot of India Street, Greenpoint, Brooklyn, N. Y. When the bridge had rung down on the mechanical telegraph 'finished with engines' I took a wheel spanner, went up the ladders to go along and cut out the boilers from the main steam line. I met the Chief Engineer who was waiting for me on the upper gratings when he told me that he had sent for another engineer in my stead.

"I protested to the Chief Engineer that that was not right, that the voyage was not completed and that I had not contemplated leaving and that I had performed my duties in every way satisfactorily. Upon which he told me that he must give these things to his friends and I asked him for reasonable time in which to secure another position, about four days. To which he dissented and refused.

"On July 1, 1929, Captain Johnson told me that he was going over to New York and that I could go over with him. I got ready and went ashore with Captain Johnson and went over to New York by way of the 23rd Street ferry. Captain Johnson and myself were sitting on a bench in the ferry house waiting for the ferry and I protested to Captain Johnson regarding this unjust dismissal. Captain Johnson told me that I knew the situation in that steamship company as well as he did, that a navigator must keep his mouth shut as it was an engineer who was marine superintendent and that Mr. John Alwick, the Chief Engineer, stood very high in the marine superintendent's esteem and that a captain of a ship could do nothing.

"I considered that the best thing that I could do was to consult an attorney as to which mode of proceedure (sic) I should take and told Captain Johnson that I thought it best that I should consult a lawyer. He made no objection or comment when I said that.

"I went downtown with Captain Johnson and stopped off at the Woolworth Building and went to the law offices of Mr. Clarence Fay, 3804 Woolworth Building, 233 Broadway. I explained the situation to Mr. Fay and showed him my work book. He advised me that he did not know that I could do anything, that I was just fired and the only thing he could advise me to do was just go down and get my money and that he would use his influence to secure me another position.

"I then went to the Shipping Commissioner and waited for Captain Johnson to come and pay me my salary I had justly earned. After leaving the Shipping Commissioner's with Captain Johnson, Captain Johnson advised me to send my work book to the company in Portland."

The libellant's testimony is not so full as the foregoing, but, for the purposes of decision, his filed memorandum will be accepted.

The Deputy United States Shipping Commissioner of the Port of New York was called by respondent, and produced the Mutual Release Book, Vol. No. 266, containing the signature of the libellant and others who were paid off on July 1, 1929, and the terms of the release as so executed were read into the record.

■ In order to be relieved from the release, the libellant must bring himself within R. S. § 4530, as amended (title 46, U. S. C. § 597 [46 USCA § 597]), which states: " * * * That notwithstanding any release signed by any seaman under section 644 any court having jurisdiction may upon good cause shown set aside such release and take such action as justice shall require."

■ Apparently the libellant relies upon the proposition that the Chief Engineer had no right to discharge him. It was so stated in Hughes v. Southern Pacific Co. (D. C.) 274 F. 876.

The Master, however, appears to have acquiesced in and sanctioned the discharge. Cf. Columbia, etc., Co. v. Lovsteen (C. C. A.) 20 F.(2d) 122.

The Master was a witness at the trial and testified that libellant did not complain to him or protest against his discharge, and identified entries in both the "official log" and the ship's log, referring to the discharge and pay-off of the libellant by "mutual consent."

■ The libellant's own showing of seeking and acting upon legal advice before signing the release, effectually dispels the possibility of the showing of good cause, which would justify setting aside the release.

The libellant is obviously a man of such mentality that, while "a ward of a Court of Admiralty," it is clear that he was quite competent to protect his own legal rights, when he accompanied the Master to the office of the Shipping Commissioner.

The release must be given the legal effect ascribed to it by R. S. § 4552, par. 2 (46 U. S. C. § 644, par. 2 [46 USCA § 644, par. 2]), and the libel will be dismissed, without costs.

Settle decree on two days' notice.